# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SEIKO EPSON CORPORATION,<br><br>3-5, Owa 3-chome<br>Suwa-shi<br>Nagano-ken, 392-8502<br>Japan,<br><br>Plaintiff,<br><br>v.<br><br>CORETRONIC CORPORATION,<br><br>No. 11, Li-Hsing Road<br>Science Park<br>Hsinchu, Taiwan 300<br>Republic of China,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No. 1:07-CV-00558-RBW** |

## DEFENDANT CORETRONIC CORPORATION'S MOTION FOR TRANSFER OF VENUE

COMES NOW the Defendant, Coretronic Corporation, by and through its undersigned counsel, and respectfully moves this Court for an Order transferring this case to the Northern District of California, for the reasons laid out in the attached Memorandum in Support of Defendant Coretronic's Motion for Transfer of Venue.

Respectfully submitted,


_/s/_____

Cheryl A. Falvey (DC Bar No. 414277)
Colleen Coyle (DC Bar No. 431218)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Tel: 202.887.4000
Fax: 202.887.4288

Yitai Hu
Elizabeth H. Rader
AKIN GUMP STRAUSS HAUER & FELD LLP
2 Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: 650.838.2000
Fax: 650.838.2001

Date:  May 21, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SEIKO EPSON CORPORATION, | ) ) ) ) | |
| 3-5, Owa 3-chome<br>Suwa-shi<br>Nagano-ken, 392-8502<br>Japan, | ) ) ) ) ) | **Civil Action No. 1:07-CV-00558-RBW** |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| CORETRONIC CORPORATION, | ) ) | |
| No. 11, Li-Hsing Road<br>Science Park<br>Hsinchu, Taiwan 300<br>Republic of China, | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM  IN SUPPORT OF DEFENDANT CORETRONIC CORPORATION'S MOTION FOR TRANSFER OF VENUE

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ...........................................................................................................1

II.   STATEMENT OF FACTS ............................................................................................2

III.  ARGUMENT ................................................................................................................3

    A.   Private Interest Weighs in Favor of a Venue Transfer ............................................ 5

        1.   SEC's Choice of Forum Is Entitled to Very Little Weight Because
             SEC Has No Connection to the District of Columbia.................................. 6

        2.   Unlike the District of Columbia, There Is Nexus Between the
             Current Dispute and Coretronic's Choice of Forum. ................................... 7

        3.   Northern California Is More Convenient for the Parties. ........................... 9

        4.   Geographic Considerations Make Northern California a More
             Convenient Forum for the Witnesses .......................................................... 9

        5.   Documents and Sources of Proof Are Either Located in Asia or
             California .................................................................................................... 10

        6.   Public Interest of Justice Likewise Warrants Transfer .............................. 11

IV.  CONCLUSION ...........................................................................................................14

i

## TABLE OF AUTHORITIES

**CASES**

*Airport Working Group of Orange County, Inc. v. U.S. Dep't of Def.*,
226 F. Supp. 2d 227, 230 (D.D.C. 2002) ............................................................. 6, 11

*Continental Grain Co. v. Barge F.B.L.-585*,
364 U.S. 19, 26-27 (1960) ......................................................................................... 4

*DeLoach v. Philip Morris Cos., Inc.*,
132 F. Supp. 2d 22, 24 (D.D.C. 2000) ............................................................ 4, 6, 9

*Gemological Inst. of America, Inc. v. Thi-Dai Phan*,
145 F. Supp. 2d 68, 72 (D.D.C. 2001) ..................................................................... 7

*Greater Yellowstone Coal. v. Bosworth*,
180 F. Supp. 2d 124, 128 (D.D.C. 2001) ............................................................ 4, 12

*McClamrock v. Eli Lilly and Co.*,
267 F. Supp. 2d 33, 37 (D.D.C. 2003) ........................................................... 4, 5, 10

*Onyeneho v. Allstate Ins. Co.*,
466 F. Supp. 2d 1, 3 (D.D.C. 2006) .............................................................. 4, 5, 12

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235, 255-56 (1981) ..................................................................................... 4

*Reiffin v. Microsoft Corp.*,
104 F. Supp. 2d 48, 52 (D.D.C 2000) .................................................................. 6, 9

*Securities and Exchange Comm'n v. Page Airways, Inc.*,
464 F. Supp. 461 (D.D.C. 1978) ............................................................................ 10

*Smiths Indus. Med. Sys. v. Ballard Med. Prods.*,
728 F. Supp. 6, 7 (D.D.C. 1989) .............................................................................. 9

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22, 29 (1988) .............................................................................................. 4

*Trout Unlimited v. United States Dep't of Agric.*,
944 F. Supp. 13, 16 (D.D.C. 1996) ................................................................ 4, 5, 12

*Van Dusen v. Barrack*,
376 U.S. 612, 616 (1964) ........................................................................................... 4

**STATUTES AND REGULATIONS**

28 U.S.C. § 1404(a) ........................................................................................... 1, 3, 4

## I.    **INTRODUCTION**

Defendant Coretronic Corporation ("Defendant" or "Coretronic") moves this Court for a transfer of venue to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).  Seiko Epson Corporation ("Plaintiff" or "SEC") has improperly brought this action for declaratory relief in this Court for no conceivable reason but to inconvenience Defendant, which, like SEC, is a foreign corporation doing business in Asia, with United States ties mainly limited to California.  SEC's action arises out of a larger, ongoing patent dispute SEC brought against Coretronic in the United States District Court for the Northern District of California.  That case involves patents that are the subject of counterclaims by Coretronic against SEC.  All negotiations over these patents took place in Asia.  While both parties have presences in California, neither has any connection to the District of Columbia. This Court should exercise its discretion under 28 U.S.C. § 1404(a) and return this action to the Northern District of California.  Such a decision would be in both the private and public interest, serving the convenience of the parties and witnesses and the interest of justice.

SEC could and should have brought this case in the Northern District of California, where it has already sued Coretronic for alleged infringement of five of SEC's patents on projector technology.  In addition, this suit has little, if any, connection with the District of Columbia.  Both parties are foreign corporations, all important operative facts leading to this case occurred outside the District of Columbia, and California would be substantially more convenient for Coretronic – the target of this suit – and its witnesses.  Finally, relevant public concerns also weigh strongly in favor of a transfer of venue because the Northern District of California's experience and familiarity with complex patent issues make it a common venue for patent litigation.  The judicial efficiency in having one court adjudicating rights and liabilities under similar patents concerning similar technologies between the same parties also supports

1

transfer of venue to the Northern District of California. The parties' claims that each

competitor's projectors infringe the other's projector patents are efficiently combined and should

be litigated in the same action in the same court. Accordingly, the Court should transfer this

action to the Northern District of California where the entire dispute between these competitors

can be heard in one proceeding.

## II.    STATEMENT OF FACTS

Coretronic is one of the world's leading providers of innovative projection and display

solutions. SEC competes head-to-head with Coretronic and its United States subsidiary Optoma

Technology, Inc. ("Optoma") in the market for projectors. Declaration of Chin-Hsing Lin ("Lin

Decl."), ¶ 9. Coretronic is headquartered in Hsinchu, Taiwan and Optoma is headquartered in

Milpitas, California. *Id.*, ¶¶ 3, 8. Plaintiff SEC is a Japanese corporation with a place of

business in Nagano-ken, Japan. An affiliate of SEC's, Epson Research and Development, Inc.

("ERDI"), has its corporate headquarters in San Jose, California and has a group in Silicon

Valley that focuses on "cutting-edge work in digital imaging technologies for cameras, copiers,

printers, *projectors*, scanners and the Internet." Declaration of Yitai Hu ("Hu Decl."), ¶ 11, Ex. J

at p. 3. (emphasis added) According to SEC, its projectors are designed by its Visual

Instruments Division, located in Japan. *Id.*, ¶ 9, Ex. H at p. 6.

After some unsuccessful licensing negotiations, on November 6, 2006, SEC sued

Coretronic and Optoma for patent infringement in the Northern District of California Civil

Action No. C06-06946 MJJ (N.D. Cal.) ("the Northern California action"). *Id.*, ¶ 2, Ex. A. That

suit alleges that Coretronic and Optoma's projectors infringe five of SEC's patents. *Id.* Each of

SEC's asserted patents relates to the arrangement of components in a projector, and four of these

specifically relate to cooling the internal parts of the projector. *Id.* Coretronic and Optoma each

timely answered, denying infringement and raising various affirmative defenses, and each

2

counterclaimed for declaratory judgment that their projectors do not infringe SEC's patents and that the asserted patents are invalid and unenforceable. The Northern California action is assigned to the Honorable Martin Jenkins.

On March 6, 2007, Coretronic provided SEC with written notice that SEC's projectors infringe two of Coretronic's United States patents, Patent Nos. 6,742,899 ("the '899 patent") and 6,739,831 ("the '831 patent"). Hu Decl., Ex. B, ¶ 7. The '899 patent and the '831 patent also relate to cooling the internal components of projectors. Hu Decl., ¶¶ 4-5, Exs. C and D. On March 19, 2007, SEC hurriedly filed this action for declaratory judgment that it does not infringe Coretronic's patents and that one or more claims of the '899 patent and/or the '831 patent are invalid. Hu Decl., ¶ 3, Ex. B. On March 21, 2007, Coretronic amended its Counterclaims in the Northern California action pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to add counterclaims that SEC has willfully infringed and is infringing Coretronic's '899 patent and '831 patents. Hu Decl., ¶ 7, Ex. F.

Rather than answer Coretronic's Amended Counterclaims, on April 9, 2007, SEC moved to Dismiss or, In the Alternative, to Stay Coretronic's First and Second Counterclaims. *Id.*, ¶ 8, Ex. G. This motion is scheduled for hearing on June 5, 2007. *Id.*, ¶ 10, Ex. I. On April 23, 2007, Coretronic moved for Leave to File Second Amended Answer and Counterclaims to add ERDI as an additional counterdefendant. *Id.*, ¶ 11, Ex. J. ERDI includes the Epson Research & Development ASD group (ASD) which focuses on the development of digital imaging technologies for projectors. *Id.*

## III.  ARGUMENT

Pursuant to 28 U.S.C. § 1404(a), a court has discretion to transfer a case from one district court to any other district court where: (1) the action may have been brought originally in the transferee forum; and (2) the transfer is "for the convenience of the parties and witnesses," and

3

"in the interests of justice." *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2006); *DeLoach v. Philip Morris Cos., Inc.*, 132 F. Supp. 2d 22, 24 (D.D.C. 2000). This provision is designed to "prevent the 'waste of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citing *Continental Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26-27 (1960)). Courts also consider "'various other factors, including the private interests of the parties and the public interest of the court' as additional considerations 'protected by the language of Section 1404(a).'" *McClamrock v. Eli Lilly and Co.*, 267 F. Supp. 2d 33, 37 (D.D.C. 2003) (citing *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)).

Section 1404(a) grants the district court broad discretion to grant motions to transfer. *See* 28 U.S.C. § 1404(a). District courts should adjudicate such motions according to an "individualized, case-by-case consideration of convenience and fairness." *Onyeneho*, 466 F. Supp. 2d at 3 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Although plaintiff's choice of forum is given deference, this deference is minimized where, as here, "the plaintiffs' choice of forum has no meaningful ties to the controversy and no particular interest in the parties or the subject matter." *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001). Even though a court should typically give deference to a plaintiff's choice of forum, it need give substantially less deference when the forum preferred by the plaintiff is not his home forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981). Furthermore, "the defendant['s] burden in a motion to transfer decreases when the plaintiffs' choice of forum has no meaningful nexus to the controversy and the parties." *Greater Yellowstone Coal.*, 180 F. Supp. 2d at 128.

4

While convenience of the parties, convenience of the witnesses, and the interests of justice are the three principal factors used by a court to determine whether to transfer a case, courts also consider "various other factors, including the private interests of the parties and the public interests of the court,' as additional considerations 'protected by the language of Section 1404(a)." *McClamrock*, 267 F. Supp. 2d at 37 (citing *Trout Unlimited*, 944 F. Supp. at 16).

As discussed below, SEC's declaratory judgment does not belong in this Court and therefore this Court should transfer the present case to a more appropriate forum, namely the United States District Court for the Northern District of California.

### A.    Private Interest Weighs in Favor of a Venue Transfer.

Among the private factors that courts have considered are the plaintiff's choice of forum, defendant's choice of forum, the location of the claim, convenience of the parties, convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the ease of access to sources of proof. *Id.*; *Onyeneho,* 466 F. Supp. 2d at 3; *Trout Unlimited*, 944 F. Supp. at 16.

Considerations of convenience and the interest of justice weigh in favor of transfer to the Northern District of California.  There is no dispute that SEC could have brought this action in the United States District Court for the Northern District of California, where litigation involving the same parties and projector patents similar to the patents in this action is already underway. Coretronic, a Taiwanese corporation, did not challenge and has already submitted to the personal jurisdiction of the Northern District of California.

Indeed, neither of the parties in this action has any connection with the District of Columbia.  Coretronic does not have offices or facilities in the District of Columbia. Lin Decl., ¶ 5.  Upon information and belief, SEC does not have any offices or facilities in the District of Columbia either.  *Id.*, ¶ 6.  Coretronic's research and development that led to the inventions of

5

the '831 and '899 patents took place in the Front Projection Business Unit of Coretronic in

Hsinchu, Taiwan. *Id.*, ¶ 12. On information and belief, the research for and development of

SEC's projectors are conducted through ERDI in San Jose, California. Hu Decl., ¶ 11, Ex. J at p.

3. SEC admits that its projectors are designed and developed by its Visual Instruments Division

located in Japan. *Id.*, ¶ 9, Ex. H at p. 6. Coretronic and SEC participated in a series of

negotiations, beginning in February 2005, in an effort to settle the patent dispute between the two

companies. Lin Decl., ¶ 18. Each of these negotiations occurred in Japan or Taiwan. *Id.*

     Both parties have significant contact, however, in the Northern District of California,

where both Coretronic's subsidiary, Optoma, and SEC's affiliate, ERDI, are headquartered. Most

importantly, the parties are already engaged in a patent litigation in the Northern District of

California, a forum chosen by SEC, involving patent technology and projectors similar to those

before this Court.

     **1.    SEC's Choice of Forum Is Entitled to Very Little Weight Because SEC
          Has No Connection to the District of Columbia.**

     Although plaintiff's choice of forum is given deference, this deference is greatly

diminished "when the forum preferred by the plaintiff is not his home forum," *Reiffin v.*

*Microsoft Corp.*, 104 F. Supp. 2d 48, 52 (D.D.C 2000); *DeLoach*, 132 F. Supp. 2d at 24

("although a plaintiff's choice of forum is ordinarily accorded a significant degree of deference,

numerous cases in this Circuit recognize that such a choice receives substantially less deference

where the plaintiffs, as here, neither reside in, nor have any substantial connection to, that

forum"); *Airport Working Group of Orange County, Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d

227, 230 (D.D.C. 2002) (where transfer is sought to the plaintiff's resident forum, plaintiff's

choice of forum is entitled to little deference), or where plaintiff has not shown any substantial

connection to the forum. *Gemological Inst. of America, Inc. v. Thi-Dai Phan*, 145 F. Supp. 2d

68, 72 (D.D.C. 2001) (granting transfer where plaintiff did not show "that the interests of this forum in the parties or the subject matter outweigh those of the proposed transferee district").

Here, SEC's Complaint, on its face, shows no basis for its choice of the District of Columbia as its choice of venue. SEC is a Japanese corporation which has previously chosen the Northern District of California as a convenient forum for litigation against Coretronic. Indeed, the Northern District is one of the closest U.S. courts, geographically, to Japan, being located in San Francisco, a city on the Pacific Rim and served by many direct flights from Japan.

SEC does not reside in the District of Columbia and thus this Court is not its home forum. The SEC projectors Coretronic has asserted its patents against are designed and developed by SEC's Visual Instruments Division, located in Japan. Hu Decl., ¶ 9, Ex. H at p. 6. According to SEC's website, the research and development for SEC's projectors is conducted at ERDI, its subsidiary or affiliate headquartered in San Jose, California. *Id.*, ¶ 11, Ex. J at p. 3. It stands to reason that important business and financial decisions relating to SEC projectors are ultimately made at and/or approved by SEC's corporate headquarters in Japan. Furthermore, licensing negotiations prior to the action before this Court between the Coretronic and SEC were *all* conducted in Asia, not the District of Columbia. Lin Decl., ¶ 18.

SEC has elected to use this Court as "part of the ordinary course of litigation strategy" to impede Coretronic's right to counterclaim against SEC in the Northern California action. Hu Decl., ¶ 6, Ex. E. Instead of answering Coretronic's invitation to discuss the '831 and '899 patents, SEC rushed to file for declaratory relief in this Court. SEC's abuse of judicial resources in order to preempt and one-up Coretronic's defense and counterclaim in the Northern California action should not be allowed.

> **2.    Unlike the District of Columbia, There Is Nexus Between the Current Dispute and Coretronic's Choice of Forum.**

Coretronic has significant and legitimate reasons for preferring the Northern District of California: Coretronic's U.S. operations are mainly conducted through its subsidiary in that district and it is already involved in litigation against SEC there. Although Coretronic is located in Taiwan, its employees at times travel to the west coast of the United States to attend trade shows. Lin Decl., ¶ 17. Optoma, Coretronic's only U.S. subsidiary and located within the Northern District of California, purchases its projectors from Coretronic. *Id.*, ¶ 8. Coretronic does not conduct any business in the District of Columbia. *Id.*, ¶ 4. Moreover, the key individuals involved in the research and development leading to the Coretronic patents all reside in Taiwan. *Id.*, ¶ 16. The inventors of the '899 patent, Shang-Hsuang Wu and Nien-Hui Hsu, reside in Taiwan and work in Hsinchu, Taiwan. *Id.*, ¶¶ 13, 15. These inventors are also named inventors on the '831 patent, along with a third inventor, Bor-Bin Chou, who also resides in Taiwan and works in Hsinchu, Taiwan. *Id.*, ¶ 14.

The pending Northern California action also provides a strong basis for seeking transfer to Northern California. The action before this Court can be litigated together with the Northern California action and there is no concern regarding delay if this instant case is transferred to the Northern District of California because the case management conference will not occur until July 10, 2007. Hu Decl., ¶ 10, Ex. I. Discovery has not yet begun. Furthermore, the Coretronic patents in this action involve the same patent technology (projectors) at issue in the Northern California action. This action and the Northern California action are two halves of a larger patent dispute between two competing projector manufacturers that should be resolved by the same court.

8

### 3.   Northern California Is More Convenient for the Parties.

It is more convenient for Coretronic and SEC to litigate this case in the Northern District of California than in the District of Columbia. Both Coretronic and SEC have their headquarters in Asia. The Court may take judicial notice of the fact that the party witnesses and representatives would need to travel more distance to reach the District of Columbia. Coretronic has no business presence in the District of Columbia. Lin Decl., ¶ 4. In fact, no Coretronic employee has ever visited the District of Columbia for any business purpose on behalf of Coretronic. *Id.*, ¶ 7. As the records indicate, Coretronic's litigation counsel, in this and the Northern California action, are located in Silicon Valley and San Francisco, within the Northern District of California.[1] Coretronic has already made substantial preparations in the Northern California action, including the gathering of patent file histories, SEC correspondence and other non-privileged documents for discoveries and disclosures in the Northern California litigation. *Id.*, ¶ 10. It is more convenient for the parties to litigate in the forum where the preparation is underway and many of the documents have already been gathered, rather than litigating similar patents and issues in two courts in opposite ends of the country. "Piecemeal litigation in the complex and technical area of patent...law is especially undesirable." *Reiffin*, 104 F. Supp. 2d at 56 (citing *Smiths Indus. Med. Sys. v. Ballard Med. Prods.*, 728 F. Supp. 6, 7 (D.D.C. 1989)). The convenience of the parties favors transfer.

### 4.   Geographic Considerations Make Northern California a More Convenient Forum for the Witnesses.

In deciding motions to transfer, the relative convenience of the parties' witnesses is a factor of particular importance. *DeLoach*, 132 F. Supp. 2d at 26 (weighing location of witnesses

as significant factor in granting motion to transfer venue). The inventors and engineers involved in the research and development that resulted in the patented inventions are likely witnesses in this litigation.

All of Coretronic's witnesses knowledgeable about the research, development, marketing and sales of the inventions claimed in the patents-in-suit are located in Taiwan or California. Lin Decl., ¶ 16. As noted, all three of the inventors on the two patents-in-suit are Taiwanese citizens who work and reside near Hsinchu, Taiwan. Coretronic employees have never traveled to the District of Columbia for work-related purposes. *Id.*, ¶ 7. Northern California therefore is a much more convenient forum for the Coretronic witnesses.

SEC's witnesses will not find the District of Columbia a convenient forum either. Indeed, SEC admits that its projectors accused of infringing Coretronic's '831 and '899 patents were designed in Japan. Hu Decl., ¶ 9, Ex. H at p. 6. Accordingly, SEC's most knowledgeable witnesses must likewise live and work in Japan. Viewed as a whole, the location of witnesses weighs heavily in favor of transfer.

### 5.   Documents and Sources of Proof Are Either Located in Asia or California.

Another relevant factor in determining the appropriateness of transferring venue is the location of sources of proof. *Securities and Exchange Comm'n v. Page Airways, Inc.*, 464 F. Supp. 461 (D.D.C. 1978) (granting motion to transfer, in part, because bulk of documentary evidence was located in transferee forum); *McClamrock*, 267 F. Supp. 2d at 37 (granting motion to transfer, in part, because transferee forum and one other state presumably were where some of evidence was located).

---

[1] While Coretronic's patent counsel, Akin Gump Strauss Hauer & Feld, has offices worldwide, including the District of Columbia, the attorneys actively representing Coretronic work in the Silicon Valley and San

Here, Coretronic has no relevant records located in the District of Columbia. Rather, all records relating to the conception, reduction to practice, development and sales of the inventions claimed in the patents-in-suit are located either in Taiwan or California. Lin Decl., ¶ 11. Specifically, most of these documents are located in Coretronic's headquarters in Hsinchu, Taiwan or Optoma's office in Milpitas, California. *Id.* In preparation for the California litigation, Coretronic's in-house counsel and support staff have already gathered relevant documents and transported them to its outside litigation counsel in Silicon Valley and San Francisco, California. *Id.*, ¶ 10. Many of these documents may also be needed in this suit because the same Coretronic technology - arrangements of projector components for efficient cooling - is at issue in the claims pleaded in both actions.

As to SEC's evidence and documents, Coretronic believes that the documents relating to the marketing, sales, research and development are located in Japan where the Visual Instruments Division and its corporate headquarters are located, and in San Jose, California where ERDI is located.

Accordingly, this factor strongly favors transfer.

### 6.    Public Interest of Justice Likewise Warrants Transfer.

In addition to the private factors discussed above, several public interest factors favor transferring this case to the Northern District of California. The public interest factors include (1) the transferee court's familiarity with the governing laws, (2) the relative congestion of the courts of the transferor and potential transferee, and (3) the local interest in deciding local controversies at home. *Airport Working Group of Orange County, Inc.*, 226 F. Supp. 2d at 229;

---

Francisco offices.

*Trout Unlimited*, 944 F. Supp. at 16; *Onyeneho*, 466 F. Supp. 2d at 3; *Greater Yellowstone Coal.*, 180 F. Supp. 2d at 129.

Certain district courts are considered the preferred forums for patent infringement litigations. [*Forum Selection in Patent Litigation: A Traffic Report for 2006*, McKelvie, 2007. (presentation to the AIPLA Spring Meeting)] (some courts are especially "familiar and comfortable with patent cases," having expressed keen interest in deciding patent cases, forming advisory committees, or adopting local rules for patent cases.)[2] The transferee court's familiarity with the governing law is a significant consideration. *Onyeneho*, 466 F. Supp. 2d at 3. Although Coretronic is mindful that this Court has also substantial expertise in adjudicating patent cases, the Northern District of California is already going to adjudicate SEC's patent infringement claim against Coretronic. It would conserve judicial resources to have the current SEC patents as well as Coretronic patents heard in the same litigation.

This action was filed less than two months ago and this motion is Coretronic's first appearance. Therefore, transfer to the Northern District of California will not cause any unnecessary delays. *Trout Unlimited*, 944 F. Supp. at 19 ("Since this case is in its earliest stages, there would be no delay associated with the [transferee] district court's having to familiarize itself with this case."). On the contrary, transfer to Northern California may speed resolution of SEC's claim for declaratory judgment because the case management conference in that action will take place on July 10, 2007 and discovery can begin right away. Hu Decl., ¶ 10, Ex. I.

This Court has little, if any, interest in resolving this dispute. SEC and Coretronic are Japanese and Taiwanese corporations, respectively. Coretronic has no officers or employees in

---

[2] The Northern District of California had the third highest number of patent litigation filings in 2006 compared to all other district courts. [*Forum Selection in Patent Litigation: A Traffic Report for 2006*, McKelvie, 2007. (presentation to the AIPLA Spring Meeting)]

the District of Columbia, and does not have any documents in the District of Columbia. The Coretronic and SEC subsidiaries and/or affiliates relevant to this dispute, ERDI and Visual Instruments Division, are California and Asian entities. Other than projector products finding their way into the hands of retailers and consumers in this district through the stream of commerce, it seems that neither party directly conducts business in the District of Columbia. Indeed, SEC has pleaded none. Both corporations, relevant personnel and witnesses, and documents are located either in California, outside the country or at least outside of the District of Columbia. Therefore, the District of Columbia seems to have little interest in the resolution of this patent infringement dispute between Coretronic and SEC.

## IV.    **CONCLUSION**

For the foregoing reasons, this action should be transferred to the Northern District of

California.

Respectfully submitted,


_/s/_____

Cheryl A. Falvey (DC Bar No. 414277)
Colleen Coyle (DC Bar No. 431218)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Tel: 202.887.4000
Fax: 202.887.4288

Yitai Hu
Elizabeth H. Rader
AKIN GUMP STRAUSS HAUER & FELD LLP
2 Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: 650.838.2000
Fax: 650.838.2001

Date:  May 21, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2007, a copy of the foregoing Defendant Coretronic

Corporation's Motion for Transfer of Venue, Memorandum of Points and Authorities in Support

of Motion for Transfer of Venue, and attached Proposed Order was served upon the following by

CM/ECF electronic notification:

> William Jerome Utermohlen
> OLIFF & BERRIDGE
> 277 South Washington Street
> Suite 500
> Alexandria, VA 22314
> Attorney for Plaintiff

_/s/_____
Elizabeth H. Rader

15

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SEIKO EPSON CORPORATION, | ) ) ) ) | |
| 3-5, Owa 3-chome<br>Suwa-shi<br>Nagano-ken, 392-8502<br>Japan, | ) ) ) ) ) | **Civil Action No. 1:07-CV-00558-RBW** |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| CORETRONIC CORPORATION, | ) ) | |
| No. 11, Li-Hsing Road<br>Science Park<br>Hsinchu, Taiwan 300<br>Republic of China, | ) ) ) ) ) | |
| Defendant. | ) | |

**DECLARATION OF YITAI HU IN SUPPORT OF DEFENDANT**
**CORETRONIC CORPORATION'S MEMORANDUM IN SUPPORT OF**
**ITS MOTION FOR TRANSFER OF VENUE**

I, Yitai Hu, declare as follows:

1.    I am an attorney with the law firm of Akin Gump Strauss Hauer & Feld LLP,

("Akin Gump") counsel to Coretronic Corporation ("Coretronic") and its United States

subsidiary, Optoma Technology Inc. ("Optoma"), in this action. I am a member in good standing

of the State Bar of California and the bar of this Court. I have personal knowledge of the facts

set forth in this declaration, except where otherwise stated, and could testify competently to such

facts under oath if called as a witness.

2.     Seiko Epson Corporation ("SEC") filed its patent infringement action in the U.S. District Court for the Northern District of California on November 6, 2006. A true copy of the Complaint is attached as Exhibit A.

3.     SEC filed the present action on March 19, 2007. A true copy of the Complaint is attached as Exhibit B.

4.     A true copy of U.S. Patent No. 6,742,899 is attached as Exhibit C.

5.     A true copy of U.S. Patent No. 6,739,831 is attached as Exhibit D.

6.     Through a letter dated March 20, 2007, SEC notified Coretronic that it had filed suit in the U.S. District Court for the District of Columbia, seeking a declaratory judgment that it does not infringe Coretronic's '899 and/or '831 patents and that the patents are invalid. A true copy of the letter is attached as Exhibit E.

7.     On March 21, 2007, Coretronic amended its Answer and Counterclaim in the California action to add counterclaims that Seiko Epson has infringed and is willfully infringing Coretronic's '899 and '831 patents. A true copy of the Amended Answer and Counterclaim is attached as Exhibit F.

8.     On April 9, 2007, SEC moved to Dismiss or, In the Alternative, to Stay Coretronic's First and Second Counterclaims in the California action. A true copy of the Amended Answer and Counterclaim is attached as Exhibit G.

9.     On May 1, 2007, SEC filed its Reply to Coretronic's Opposition to Motion to Dismiss or, in the Alternative, To Stay Coretronic's First and Second Counterclaims. A true copy of the Reply is attached as Exhibit H.

10.     On May 11, 2007, the Court in the California action notified the parties that the hearing date regarding SEC's Motion to Dismiss or, In the Alternative, to Stay Coretronic's First

2

and Second Counterclaims has been reset to June 5, 2007 and the Initial Case Management Conference has been reset to July 10, 2007. A true copy of this Notice is attached as Exhibit I.

11.     On April 23, 2007, Coretronic filed its Notice of Motion and Motion for Leave to File Second Amended Answer and Counterclaim in the California action. The proposed pleading adds Epson Research and Development, Inc., SEC's affiliate located in Silicon Valley, as a counterdefendant accused of infringing the same patents. A true copy of this Motion is attached as Exhibit J.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  May 21, 2007

                                                      /s
                                                      _____
                                                      Yitai Hu

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SEIKO EPSON CORPORATION,<br><br>    3-5, Owa 3-chome<br>    Suwa-shi<br>    Nagano-ken, 392-8502<br>    Japan,<br><br>        Plaintiff,<br><br>    v.<br><br>CORETRONIC CORPORATION,<br><br>    No. 11, Li-Hsing Road<br>    Science Park<br>    Hsinchu, Taiwan 300<br>    Republic of China,<br><br>        Defendant. | **Civil Action No. 1:07-CV-00558-RBW** |

**DECLARATION OF CHIN-HSING LIN IN SUPPORT OF DEFENDANT CORETRONIC CORPORATION'S MEMORANDUM  IN SUPPORT OF ITS MOTION FOR TRANSFER OF VENUE**

I, Chin-Hsing Lin, declare that:

1.    I have knowledge of the facts set forth in this Declaration and, if called as a witness, would testify competently, under oath, to the facts stated below.

2.    I am currently employed by Coretronic Corporation ("Coretronic"), and my current job title is Associate Vice President of the Front Projection Business Unit.  As Associate Vice President, my responsibilities include supervising the research and development of the Front Projection Business Unit and managing the patent application process in the Front Projection Business Unit of Coretronic.  The inventions claimed in Coretronic's United States

patents, Patent Nos. 6,739,831 ("the '831 patent") and 6,742,899 ("the '899 patent"), were developed in the Front Projection Business Unit of Coretronic under the direct supervision of Mr. Tsung-Wang Chien, the director of the Engineering Technology Department. At the time of the inventions of the '831 and '899 patents, Mr. Tsung-Wang Chien reported directly to me at Coretronic.

3.    Coretronic is a Taiwanese company whose primary business involves research, development, manufacturing, and sales of innovative projection and display solutions. Coretronic's corporate headquarters is located at No. 11, Li-Hsing Road, Science Park, Hsinchu, Taiwan 300, Republic of China.

4.    Coretronic does not conduct any business in the District of Columbia.

5.    Coretronic does not have any offices or employees in the District of Columbia.

6.    To the best of my knowledge, after a reasonable investigation, SEC does not have offices or facilities in the District of Columbia.

7.    To the best of my knowledge, after a reasonable investigation through discussions with the directors of the research, development and sales departments at Coretronic, no Coretronic employee has visited the District of Columbia on behalf of Coretronic for any business purpose related to Coretronic.

8.    Optoma Technology, Inc. ("Optoma") is a California corporation and sole subsidiary of Coretronic in the United States. Optoma's corporate headquarters are located at 715 Sycamore Drive, Milpitas CA 95035. Coretronic is a manufacturer of projectors for Optoma. Optoma markets and sells projectors manufactured by Coretronic from its headquarters in Milpitas, California.

9.    SEC competes head-to-head with Coretronic and Optoma in the market for

2

(q)

projectors.

10.    The '899 and '831 patents were both prosecuted on behalf of Coretronic by its patent counsel, North American International Patent Office ("NAIPO"), located in Taipei, Taiwan.  Documents related to the prosecution of the '899 and '831 patents are currently located at the offices of NAIPO in Taipei, Taiwan as well as at Coretronic's headquarters in Hsinchu, Taiwan.

11.    Coretronic has made substantial preparations in anticipation of the litigation against SEC in the Northern District of California, including gathering of patent file histories, correspondence with SEC and other non-privileged relevant documents.  These documents have been transported to Coretronic's outside litigation counsel in Palo Alto, California.

12.    All records relating to the conception, reduction to practice, development and sales of products embodying the patented inventions of the patents-in-suit are located in Taiwan or California.  Most of these documents are located in Coretronic's headquarters in Taiwan or Optoma's office in Milpitas, California.

13.    Coretronic's research and development that led to the inventions claimed in the '831 and '899 patents took place in the Front Projection Business Unit of Coretronic in Hsinchu, Taiwan.

14.    Nien-Hui Hsu, a co-inventor of the '831 and '899 patents, currently works for Coretronic and resides near Hsinchu, Taiwan.

15.    Bor-Bin Chou, a co-inventor of the '831 patent, currently works for Coretronic and resides near Hsinchu, Taiwan.

16.    Shang-Hsuang Wu, a co-inventor of the '831, and '899 patents, currently works for Coretronic and resides near Hsinchu, Taiwan.

3

(q)

17.    Each of the inventors of the '831 and '899 patents, Nien-Hui Hsu, Bor-Bin Chou, and Shang-Hsuang Wu, has informed me that he has never traveled to the District of Columbia.

18.    All of Coretronic's employees knowledgeable about the research, development, marketing and sales of the inventions claimed in the patents-in-suit are located in Taiwan or California.

19.    Coretronic employees at times travel to the west coast of the United States to attend trade shows.

20.    I understand between February 2005 and now, Coretronic and SEC participated in a series of negotiations, including one after SEC sued Coretronic in the Northern District of California action, in order to try to resolve the licensing dispute between the two companies. All of these meetings were held in either Taipei, Taiwan or Tokyo, Japan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 18, 2007, in Hsinchu, Taiwan.

/s/ CHIN-HSING LIN

_____
Chin-Hsing Lin

4

(q)

# EXHIBIT A

1  JAMES A. OLIFF (*Pro Hac Vice pending*)
   JOHN W. O'MEARA (*Pro Hac Vice pending*)
2  ROBERT E. SALYER (*Pro Hac Vice pending*)
   **OLIFF & BERRIDGE, PLC**
3  277 South Washington Street, Suite 500
   Alexandria, VA 22314
4  Tel.703.836.6400
   Fax 703.836.2787
5  joliff@oliff.com; jomeara@oliff.com; rsalyer@oliff.com

6
   **LOCAL COUNSEL:**
7
   SUSAN VAN KEULEN,  CA BAR NO. 136060
8  CHRISTOPHER L. OGDEN CA BAR NO.  235517
   **THELEN REID & PRIEST LLP**
9  225 West San Carlos Street, Suite 1200
   San Jose, CA  95113
10 Tel. 408.292.5800
   Fax 408.287.8040
11
   Attorneys for Plaintiff
12 SEIKO EPSON CORPORATION

13

14            UNITED STATES DISTRICT COURT

15       FOR THE NORTHERN DISTRICT OF CALIFORNIA

16

17 SEIKO EPSON CORPORATION, a Japanese         Case No.:
   corporation,
18                                             **COMPLAINT FOR PATENT
           Plaintiff,                          INFRINGEMENT**
19
20 CORETRONIC CORPORATION, a                   **DEMAND FOR JURY TRIAL**
21 Taiwanese Corporation; and
22 OPTOMA TECHNOLOGY, INC. a
   California corporation,
23
           Defendants.
24

25

26

27

28

ORIGINAL
FILED

NOV – 6 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ADR

E-FILING

WDB

C06   06946

1     1.     Plaintiff Seiko Epson Corporation ("SEIKO EPSON") is a company organized

2 under the laws of Japan, with a place of business at 3-5Owa-chome, Suwa-shi, Nagano-ken, 392-

3 8502, Japan.

4     2.     On information and belief, Defendant Coretronic Corporation ("CORETRONIC")

5 is a company organized under the laws of Taiwan, with a place of business at No.11, Li-Hsing

6 Road, Science Park, Hsinchu, Taiwan 300, R.O.C. and is subject to suit in California.

7     3.     On information and belief, Defendant Optoma Technology, Inc. ("OPTOMA") is a

8 California corporation having a principal place of business at 715 Sycamore Drive, Milpitas CA

9 95035 and is subject to suit in California.

10                                **JURISDICTION AND VENUE**

11     4.     This action arises under the patent laws of the United States, Title 35 of the United

12 States Code.

13     5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

14 1338(a).

15     6.     Venue in this district is proper pursuant to 28 U. S. C. § 1391(b) & (c)  and

16 §1400(b).

17

18                               **INTRADISTRICT ASSIGNMENT**

19     7.     Intradistrict assignment under Civil L.R. 3-2(c) is not applicable as this matter is an

20 intellectual property action.

21                           **Count I (Patent Infringement)**

22     8.     SEIKO EPSON repeats and realleges paragraphs 1-7 above.

23     9.     SEIKO EPSON is the sole owner of United States Patent No. 6,203,158 (the "158

24 patent"), issued on March 20, 2001, and has the right to sue on the '158 patent.

25     10.     SEIKO EPSON is the sole owner of United States Patent No. 6,402,324 (the "324

26 patent"), issued on June 11, 2002 and has the right to sue on the '324  patent.

27     11.     SEIKO EPSON is the sole owner of United States Patent No. 6,527,392 (the "392

28 patent"), issued on March 4, 2003, and has the right to sue on the '392  patent.

12. SEIKO EPSON is the sole owner of United States Patent No. 6,558,004 (the "004 patent"), issued on May 6, 2003 and has the right to sue on the '004 patent.

13. SEIKO EPSON is the sole owner of United States Patent No. 6,644,817 (the "817 patent"), issued on November 11, 2003, and has the right to sue on the '817 patent.

14. The '158, '324, '392, '004 and '817 Patents, cumulatively (the "SEIKO EPSON PATENTS"), are directed to projectors and related apparatuses.

15. On information and belief, CORETRONIC has infringed and is continuing to infringe the SEIKO EPSON PATENTS by making, using, offering to sell, selling and/or importing into the United States projectors that are encompassed by claims of the SEIKO EPSON PATENTS, and by inducing others to infringe the SEIKO EPSON PATENTS. On information and belief, CORETRONIC will continue to infringe the SEIKO EPSON PATENTS unless enjoined by this Court.

16. On information and belief, OPTOMA has infringed and is continuing to infringe the SEIKO EPSON PATENTS by making, using, offering to sell, selling and/or importing into the United States projectors that are encompassed by claims of the SEIKO EPSON PATENTS, and by inducing others to infringe the SEIKO EPSON PATENTS. On information and belief, OPTOMA will continue to infringe the SEIKO EPSON PATENTS unless enjoined by this Court.

17. CORETRONIC had knowledge of the SEIKO EPSON PATENTS, and has therefore infringed the SEIKO EPSON PATENTS willfully and deliberately, thereby rendering this case exceptional under the United States patent laws.

18. OPTOMA had knowledge of the SEIKO EPSON PATENTS, and has therefore infringed the SEIKO EPSON PATENTS willfully and deliberately, thereby rendering this case exceptional under the United States patent laws.

WHEREFORE, SEIKO EPSON prays that this Court:

1. Adjudge and decree that CORETRONIC has directly or indirectly infringed one or more claims of each of the SEIKO EPSON PATENTS;

2. Preliminarily and permanently enjoin CORETRONIC, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive

1   actual notice of the order by personal service or otherwise, from continuing to infringe the SEIKO

2   EPSON PATENTS;

3       3.      Order CORETRONIC to pay damages sustained by SEIKO EPSON by reason of

4   CORETRONIC's infringement of the Seiko Epson Patents, together with interest and costs;

5       4.      Adjudge and decree that CORETRONIC's infringement of the SEIKO EPSON

6   PATENTS has been and is willful and deliberate, and award SEIKO EPSON increased damages

7   pursuant to 35 U.S.C. § 284;

8       5.      Adjudge and decree that OPTOMA has directly or indirectly infringed one or more

9   claims of each of the SEIKO EPSON PATENTS;

10      6.      Preliminarily and permanently enjoin OPTOMA, its officers, agents, servants,

11  employees, attorneys, and those persons in active concert or participation with them who receive

12  actual notice of the order by personal service or otherwise, from continuing to infringe the SEIKO

13  EPSON PATENTS;

14      7.      Order OPTOMA to pay damages sustained by SEIKO EPSON by reason of

15  OPTOMA's infringement of the SEIKO EPSON PATENTS, together with interest and costs;

16      8.      Adjudge and decree that OPTOMA's infringement of the SEIKO EPSON

17  PATENTS has been and is willful and deliberate, and award SEIKO EPSON increased damages

18  pursuant to 35 U.S.C. § 284;

19      9.      Award SEIKO EPSON attorneys' fees pursuant to 35 U.S.C. §285 and/or any other

20  appropriate provision of law; and

21      10.     Award SEIKO EPSON such further relief as this Court deems just and proper.

22

23                              **JURY DEMAND**

24          SEIKO EPSON hereby demands, pursuant to Fed. R. Civ. P. 38, a trial by jury of

25  all issues so triable.

26

27

28

Dated: November 6, 2006

Respectfully submitted,

SEIKO EPSON CORPORATION .

By: _Christopher Ogden_____
  Susan Van Keulen
  Christopher L. Ogden
  THELEN REID & PRIEST, LLP
  225 West Santa Clara Street
  Suite 1200
  San Jose, CA 95113

Attorneys for Plaintiff Seiko Epson Corporation

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SEIKO EPSON CORPORATION, | ) | |
| | ) | |
| 3-5, Owa 3-chome | ) | |
| Suwa-shi | ) | |
| Nagano-ken, 392-8502 | ) | |
| Japan, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: _____ |
| v. | ) | |
| | ) | |
| CORETRONIC CORPORATION, | ) | |
| | ) | |
| No.11, Li-Hsing Road | ) | |
| Science Park | ) | |
| Hsinchu, Taiwan 300 | ) | |
| Republic of China, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Seiko Epson Corporation ("Seiko Epson"), for its Complaint against Coretronic

Corporation ("Coretronic"), states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Seiko Epson is a company organized under the laws of Japan, with a place of

business at 3-5, Owa 3-chome, Suwa-shi, Nagano-ken, 392-8502 Japan.

2.      Upon information and belief, Coretronic is a company organized under the laws of

the Republic of China, with a place of business at No.11, Li-Hsing Road, Science Park, Hsinchu,

Taiwan 300, Republic of China.

3.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201,

concerning issues arising under the patent laws of the United States, Title 35, United States

Code. Jurisdiction is conferred on this Court pursuant to 35 U.S.C. § 293 and 28 U.S.C. §§ 1331, 1338(a), and 2201.

4.    Venue is proper in this district pursuant to 35 U.S.C. § 293 and 28 U.S.C. § 1391.

## FACTS

5.    Upon information and belief, Coretronic owns U.S. Patent Nos. 6,742,899 B1 (the "899 Patent") and 6,739,831 B2 (the "831 Patent") and has made no designation pursuant to 35 U.S.C. § 293 with respect to the 899 and 831 Patents.

6.    Seiko Epson manufactures projectors that are sold in the United States.

7.    By letter dated March 6, 2007, an officer of Coretronic stated to Seiko Epson that Coretronic had "determined that Seiko Epson projectors have infringed and are infringing [the 899 and 831] Coretronic patents" and indicated an intent to assert such claims against Seiko Epson in court.

8.    Seiko Epson does not infringe and has not infringed the 899 or 831 Patents directly, contributorily or by inducement.

9.    One or more claims of the 899 and 831 Patents are invalid for failure to satisfy the requirements of Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103 and/or 112.

10.    Accordingly, an actual controversy exists between Coretronic and Seiko Epson.

WHEREFORE, Seiko Epson prays that this Court:

A.    Adjudge and decree that Seiko Epson is not infringing and has not infringed any claim of the 899 Patent;

B.    Adjudge and decree that Seiko Epson is not infringing and has not infringed any claim of the 831 Patent;

C.    Adjudge and decree that one or more claims of the 899 Patent are invalid;

D.    Adjudge and decree that one or more claims of the 831 Patent are invalid;

E.    Award Seiko Epson its attorneys' fees; and

F.    Award Seiko Epson such further relief as this Court deems just and proper.

## JURY DEMAND

Seiko Epson Corporation hereby demands, pursuant to Fed. R. Civ. P. 38, a trial by jury of all issues so triable.

DATED this 17th day of March 2007.

Respectfully submitted,

SEIKO EPSON CORPORATION

William J. Utermohlen, D.C. Bar No. 384902
OLIFF & BERRIDGE, PLC
277 South Washington Street
Suite 500
Alexandria, VA 22314
Telephone: 703-836-6400
Facsimile: 703-836-2787

Attorney for Plaintiff Seiko Epson Corporation

## CERTIFICATE REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 7.1(a)

I, the undersigned, counsel of record for Seiko Epson Corporation, certify that to the best of my knowledge and belief, Seiko Epson has no parent corporations and that no publicly held corporation owns more than 10% of Seiko Epson's stock, other than Aoyama Kigyo Kabushiki Kaisha.

William J. Utermohlen
_____
William J. Utermohlen

Attorney for Seiko Epson Corporation

# EXHIBIT C

US006742899B1

(12) **United States Patent**         (10) **Patent No.:**     **US 6,742,899 B1**

Wu et al.                              (45) **Date of Patent:**      **Jun. 1, 2004**

| | | |
|---|---|---|
| (54) | **COOLING APPARATUS FOR PROJECTOR CASING** | |
| (75) | Inventors: | **Shang-Hsuang Wu**, Hsin-Chu (TW); **Nien-Hui Hsu**, Hsin-Chu (TW) |
| (73) | Assignee: | **Coretronic Corporation**, Hsin-Chu (TW) |
| ( * ) | Notice: | Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days. |
| (21) | Appl. No.: | **10/249,474** |
| (22) | Filed: | **Apr. 14, 2003** |
| (30) | **Foreign Application Priority Data** | |

Apr. 17, 2002    (TW) ..................................... 091205459 U

(51) **Int. Cl.$^7$** ......................... **G03B 21/16**; G03B 21/20
(52) **U.S. Cl.** ........................... **353/61**; 353/60; 362/264; 362/294
(58) **Field of Search** ............................. 353/57, 58, 60, 353/61, 119; 362/294, 264, 263

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,925,295 | A | * | 5/1990 | Ogawa et al. ................. | 353/57 |
| 5,287,132 | A | * | 2/1994 | Suzuki et al. ............... | 353/119 |
| 5,722,753 | A | * | 3/1998 | Okada et al. ............... | 353/119 |
| 5,842,761 | A | * | 12/1998 | Futakami et al. ........... | 353/119 |
| 6,004,010 | A | * | 12/1999 | Inage et al. ............... | 362/294 |
| 6,283,614 | B1 | * | 9/2001 | Okada et al. ............... | 362/294 |
| 6,398,366 | B1 | * | 6/2002 | Hara et al. .................... | 353/57 |
| 6,494,581 | B2 | * | 12/2002 | Shimizu ....................... | 353/61 |
| 6,575,599 | B1 | * | 6/2003 | Imamura et al. ............ | 362/294 |

* cited by examiner

*Primary Examiner*—William C. Dowling
(74) *Attorney, Agent, or Firm*—Winston Hsu

(57)                **ABSTRACT**

The present invention comprises a lamp holder with a lamp inside a casing; at least one guiding surface at the lower edge proximate one side of the lamp holder; a ventilation outlet disposed on the lamp holder at a position corresponding to one side of the guiding surface proximate the casing; an upper sheet at the top of the lamp holder keeping a specific distance from the casing to define an upper air duct; a lower sheet at the bottom of the lamp holder keeping a specific distance from the casing to define a lower air duct and connecting to the guiding surface. A fan proximate one side of the guiding surface for blowing the air through the lamp holder and the upper and lower air ducts, then discharge the hot air from the ventilation outlet for the heat dispersion. Therefore, this invention reducing the temperature of the lamp which near the casing.

**11 Claims, 6 Drawing Sheets**





FIG. 1 (PRIOR ART)



**FIG. 2 (PRIOR ART)**



**FIG. 3**



**FIG. 4**



**FIG. 5**



FIG. 6

US 6,742,899 B1

1

# COOLING APPARATUS FOR PROJECTOR CASING

## BACKGROUND OF INVENTION

### 1. Field of the Invention

The present invention relates to a projector, and more particularly, to a cooling apparatus for projector casing for shielding the radiant heat.

### 2. Description of the Prior Art

In general, a projector usually uses a high power light bulb as the light source to provide a bright and clear image and offer a comfortable viewing environment for audiences, and thus turning the light bulb into the largest heat source of the projector. The temperature of the upper and lower casings adjacent to the light bulb is higher than the temperature at other parts of the casings. To assure the user's safety and improve the product quality, prior-art projectors usually use fans to cool and reduce the temperature of the casing.

Please refer to FIG. 1 for a projecting light source 10 of a conventional projector, which comprises a light bulb 11 coupled to a lamp holder 13 by a movable fixture 12, and the lamp holder 13 being fixed to a lower casing 15, by a screw 14; wherein an upper casing 16 of the projector being disposed at a position as close as possible to the lamp 11 to minimize the thickness of the projector and meet the consumer's requirements for a modern compact equipment. Therefore, although there is a cooling fan (not shown in the figure) on one side of the lamp 11, the lamp at its top has no shelter. Therefore, the upper casing 16 and the lamp holder 13 adjacent to the lamp 11 will still be heated up by the radiant heat and hot air produced by the high temperature of the lamp 11, and conducted through the lamp holder 13 to the lower casing 15 near the lamp holder 13, causing the temperature of the upper and lower casings of the projector near the light source 10 higher than the temperature of other parts of the casing. It does not only heat up the plastic casing to a high temperature, but also expedites the deterioration; even for metal casings, it will also produce heat of high temperature, which makes the use of projector unsafe and inconvenient.

In FIG. 2, it shows another light source 20 of a conventional projector, wherein a lamp 21 being coupled to a lamp holder 22; a lamp housing 23 being disposed inside the projector; the lamp holder 22 being placed and coupled into the lamp housing 23 from the bottom of the lamp housing through a slot (not shown in the figure) of the lower casing 25; and a fan 24 being disposed on one side of the lamp housing for cooling the lamp 21. Although a cover 231 not fully closed is disposed at the top of the lamp housing 23 for shielding the lamp 21 from directly lighting up the upper casing 26, the cover 231 of the lamp housing 23 closely attaches onto the upper casing 26 of the projector. Therefore, the radiant heat of the lamp 21 will still be conducted through the cover 231 and the lamp holder 22 to the upper and lower casings 25, 26. There is a gap between the cover 231 and the upper casing 26 due to the error of manufacturing or assembling, but it does not constitute an air duct for the airflow. The air in the gap remains still and is heated up continuously, which also ends up a high temperature it causes the temperature at the upper and lower casings adjacent to the light source 20 higher than other parts of the housing, and thus having the shortcoming of making the application of the projector unsafe and inconvenient.

## SUMMARY OF INVENTION

The objective of the present invention is to provide a cooling apparatus for projector casing by using a sheet as a

2

shielding for the radiant heat and facilitating the airflow to isolate the radiant heat and the hot air of high temperature near the lamp in order to reduce the temperature of the casing and improve the quality of the product.

To achieve the foregoing objective, the present invention comprises a lamp holder with a lamp inside a casing; at least one guiding surface at the lower edge proximate one side of the lamp holder; an ventilation outlet disposed on the lamp holder at a position corresponding to one side of the guiding surface proximate the casing; an upper sheet at the top of the lamp holder keeping a specific distance from the casing to define an upper air duct; a lower sheet at the bottom of the lamp holder keeping a specific distance from the casing to define a lower air duct and connecting to the guiding surface for installing a fan proximate one side of the guiding surface in order to blow the air through the lamp holder and the upper and lower air ducts and then discharge the hot air from the ventilation outlet for the heat dispersion.

## BRIEF DESCRIPTION OF DRAWINGS

Other features and advantages of the present invention will become apparent in the following detailed description of the preferred embodiments with reference to the accompanying drawings, in which:

FIG. 1 is a cross-sectional diagram of the side view of the light source and the casing according to the prior art.

FIG. 2 is a cross-sectional diagram of the rear view of the other light source and the casing according to the prior art.

FIG. 3 is a perspective diagram of the cooling apparatus for projector casing according to the present invention.

FIG. 4 is a perspective diagram of the light source according to the present invention.

FIG. 5 is a cross-sectional diagram of the cooling apparatus for projector casing according to the present invention.

FIG. 6 is a cross-sectional diagram of the cooling apparatus for projector casing according to the other embodiment of the present invention.

## DETAILED DESCRIPTION

To make it easier for our examiner to understand the technology, measures, and effects of this invention, please refer to the detailed specification together with the attached drawing for the innovative features, and performance.

Please refer to FIG. 3 for the cooling apparatus for projector casing according to a preferred embodiment of the present invention, which comprises a lamp 31, a lamp holder 32, a lamp housing 33, a secondary ventilation outlet 34, a lower casing 35, and a fan 40. The lamp 31 is coupled inside the lamp holder 32, and then placed and fixed into the lamp housing 33 proximate the secondary ventilation outlet 34 of the lower casing 35, and the fan 40 disposed on one side of the lamp housing 33 drives the air to disperse heat.

Among which, the secondary ventilation outlet 34 is disposed at one side of the lower casing 35 of the projector, and the lower casing 35 has a base 36; a cooling apparatus for projector casing 30 is disposed at the secondary ventilation outlet 34 proximate the base 36; a support 331 is extended from the base 36 around the cooling apparatus for projector casing 30 to define a lamp housing 33; an upper sheet 332 constitutes the top of the lamp housing 33 to cover the lamp 31 and isolate the radiant heat produced by the upward illumination of the high temperature lamp 31. The upper sheet 332 couples and fixes to the lamp holder 32 by the lamp housing 33.

In FIG. 4, the lamp holder 32 of the projector in accordance with the present invention has a lamp 31 installed in

3

the lamp holder 32; a lower sheet 322 is disposed on the lower surface of a bottom bracket 321 of the lamp holder 32, and the lower sheet 322 covers the whole lower surface of the bottom bracket 321 to isolate and downwardly radiate the radiant heat produced by the high-temperature lamp 31 and the high-temperature hot air nearby; a hollow guiding surface 323 is disposed on one side of the bottom bracket 321 of the lamp holder 32 proximate the lower edge and connected to the lower sheet 322 that constitutes the projecting light source of the projector.

Please refer to FIG. 5 for the cooling apparatus for projector casing 30 of the present invention. The lamp housing 33 is disposed into the projector housing composed of an upper casing 35 and a lower casing 37 and located proximate the secondary ventilation outlet 34 of the lower casing 35; an upper sheet 332 disposed at the top of the lamp housing 33 and keeping an appropriate distance from the upper casing 37 to form a gap between the upper sheet 332 and the upper casing 37 and constitute the upper air duct 38 to avoid the heat being conducted to the upper casing 37. Furthermore, a ventilation outlet 39 is disposed on the casing proximate one side of the lamp housing 33; a fan 40 is disposed next to the other side of the lamp housing 33; the light source including the lamp 31 and the lamp holder 32 are coupled Into the lamp housing 33 such that the side of lamp holder 32 having the guiding surface faces the fan 40 and keeps a gap between the lower sheet 322 at the lower side of the lamp holder 32 and the lower casing 35 to form a lower air duct 361; one side of the lower air duct 361 faces the secondary ventilation outlet 34 of the lower casing 35 to prevent the heat being conducted to the lower casing 35.

When the cooling apparatus according to the present invention disperses performs heat dispersion, the fan 40 drives the air to flow towards the lamp housing 33; most of the air pass through the lamp housing 33 and the lamp 31, then discharge from the ventilation outlet 39 to cool the lamp 31. Part of the air flows through the upper air duct 38 and discharges through the upper end of the ventilation outlet 39, such that when the upper sheet 332 bearing the radiant heat of the high-temperature lamp 31 generates a convection of heat, and such part of the air cools the upper sheet 332 to reduce the conduction of heat to the upper casing 37, therefore, reducing the temperature of the upper casing 37 near the top of the lamp 31. Furthermore, part of the air blown from the fan 40 passes through the guiding surface 323 at the lower side of the lamp holder 32 to guide the airflow into the lower air duct 361, and discharge the hot air through the secondary ventilation outlet 34 of the lower casing 35, such that when the lower sheet 322 bearing the radiant heat of the high temperature lamp 31 generates a convection of heat, such part of the air cools the lower sheet 332 to reduce the conduction of heat to the lower casing 35 and also reduce the temperature of the lower casing 35 near the bottom of the lamp 31.

Similarly, refer to FIG. 6 for the other embodiment of the present invention, which fix the lamp holder 32 onto the casing without the lamp casing 33. In addition, although the upper sheet 332 and the lower sheet 322 in accordance with the previous embodiment of this invention are described as being coupled by the lamp housing 33 or the lamp holder 32.

4

In fact, the upper and lower sheets 332, 322 may be installed individually, and then fixed to the lamp housing 33, lamp holder 32, lower casing 35 or upper casing 37 by a fixture 351 or 371. Further, the fan 40 of this invention may be disposed next to the position between the ventilation outlet 39 and the lamp holder 31 for discharging the air from the ventilation outlet 39. The secondary ventilation outlet 34 may be part of the ventilation outlet 39 in order to simplify the structure of the casing. By the same token, the present invention can achieve the effect of cooling the casing.

What is claimed is:

1. A cooling apparatus for projector casing, comprising:
a casing having an interior;
a lamp holder fixed in the interior of the casing, and having at least one guiding surface on one side near the lower edge of the lamp holder;
a ventilation outlet disposed on the casing and proximate the side of the lamp holder;
an upper sheet disposed at the top of the lamp holder and keeping a distance from the casing to define an upper air duct;
a lower sheet disposed at the bottom of the lamp holder and keeping a distance from the casing to define a lower air duct; and
a fan disposed adjacent to the lamp holder.

2. The cooling apparatus for projector casing of claim 1, wherein the lower sheet is fixed onto the lower surface of the lamp holder.

3. The cooling apparatus for projector casing of claim 1, wherein the lower sheet is the lower surface of the lamp holder.

4. The cooling apparatus for projector casing of claim 1, wherein the casing in its interior has a lamp housing, and the lamp housing in its interior has a fixed lamp holder; and the lamp holder at its interior couples to a lamp.

5. The cooling apparatus for projector casing of claim 4, wherein the upper sheet is disposed on the upper surface of the lamp housing.

6. The cooling apparatus for projector casing of claim 5, wherein the upper sheet is the upper surface of the lamp housing.

7. The cooling apparatus for projector casing of claim 1, wherein the casing comprises an upper casing and a lower casing; a gap being kept between the upper casing and the upper sheet to define an upper air duct; and a gap being kept between the lower casing and the lower sheet to define a lower air duct.

8. The cooling apparatus for projector casing of claim 7, wherein the upper sheet is fixed onto the upper casing.

9. The cooling apparatus for projector casing of claim 7, wherein the lower sheet is fixed onto the lower casing.

10. The cooling apparatus for projector casing of claim 7, wherein the lower air duct having an outlet connected to a secondary ventilation outlet disposed at the lower side of the ventilation outlet.

11. The cooling apparatus for projector casing of claim 1, wherein the fan is disposed adjacent to the side of a lamp holder having the guidance surface.

*    *    *    *    *

# EXHIBIT D

US006739831B2

(12) **United States Patent**

Hsu et al.

(10) Patent No.: **US 6,739,831 B2**
(45) Date of Patent: **May 25, 2004**

(54) **COOLING DEVICE FOR PROJECTOR**

(75) Inventors: **Nien-Hui Hsu**, Hsin-Chu (TW);
**Bor-Bin Chou**, Hsin-Chu (TW);
**Shang-Hsuang Wu**, Hsin-Chu (TW)

(73) Assignee: **Coretronic Corporation**, Hsin-Chu (TW)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 76 days.

(21) Appl. No.: **10/064,187**

(22) Filed: **Jun. 20, 2002**

(65) **Prior Publication Data**

US 2002/0197158 A1 Dec. 26, 2002

(30) **Foreign Application Priority Data**

Jun. 22, 2001 (TW) ...................................... 90210604 U

(51) **Int. Cl.**[7] ................................................ F04D 13/12

(52) **U.S. Cl.** ........................... **415/60**; 415/66; 415/175; 353/58; 353/61

(58) **Field of Search** ............................... 415/60, 62, 66, 415/67, 175; 353/58, 60, 61, 119, 57

(56) **References Cited**

U.S. PATENT DOCUMENTS

3,180,981 A * 4/1965 Ulffers ........................ 362/294

4,925,295 A * 5/1990 Ogawa et al. ................. 353/57
6,254,238 B1 * 7/2001 Takamatsu .................... 353/61
6,443,575 B1 * 9/2002 Miyamoto et al. ............ 353/58

FOREIGN PATENT DOCUMENTS

JP         2001242434 A * 9/2001 .............. G02F/1/13

* cited by examiner

*Primary Examiner*—Ninh H. Nguyen
(74) *Attorney, Agent, or Firm*—Winston Hsu

(57) **ABSTRACT**

A cooling device for projector, comprising a light source, an exhaust fan, an air directing fan, an air duct, air inlet windows, an optical engine, a circuit board, a light cut, and a power supply to constitute a projector device with high brightness and high contrast. The projector includes a design that directs hot air flow directly into fan blades of an exhaust fan, thereby effectively reducing adverse effects and solving problems of conventional technology, such as failure to direct hot air flow into the fan blades of the exhaust fan, resulting in excessively high average temperature in the fan hub area that is in alignment with the hot air current, and high working temperature of motor bearings, control circuits, rotors and stators in the fan hub, so that the fan hub can be operating under lower temperatures, thereby enhancing normal performance, effective working life and reliability of the fan and the projector.

**6 Claims, 9 Drawing Sheets**



Case 1:07-cv-00558-RBW    Document 5-8    Filed 05/21/2007    Page 3 of 14



**FIG.  1 (PRIOR ART)**



FIG. 2 (PRIOR ART)



FIG. 3



FIG. 4



**FIG.   5 (PRIOR ART)**



**FIG.   6**

Case 1:07-cv-00558-RBW    Document 5-8    Filed 05/21/2007    Page 8 of 14



**FIG.  7**

**U.S. Patent**    May 25, 2004    Sheet 7 of 9    US 6,739,831 B2



**FIG.   8 (PRIOR ART)**



**FIG.   9**



**FIG.   10**



**FIG.   11**



**FIG.    12**

US 6,739,831 B2

1

# COOLING DEVICE FOR PROJECTOR

## BACKGROUND OF INVENTION

### 1. Field of the Invention

The invention relates to a cooling device for a projector, and particularly to a cooling device that direct hot air directly into fan blades to reduce temperature of fan hub.

### 2. Description of the Prior Art

Please refer to FIG. 1 that illustrates a prior art of projector 10, comprising a light source 121 of a light unit 12 inside a casing 11, the light source 121 creating a high-brightness and high-contrast projecting light ray 122 when acted on by an optical engine 13m. A light cut 123 installed on the upper side of the light unit 12 to obstruct the light source 121 of the light unit 12. In the prior art, heated air is subject to the action of a first fan 157, air entering the projector 10 through a first air inlet window 151 becomes a first hot current 153, which after passing a first printed circuit board 141 is separated into a third hot current 155 and a fourth hot current 156. The third hot current 155 passing a first fan 157 and fan blades 1572 is exhausted out of the projector 10, and the fourth hot current 156 is directed through the third fan 162 into the light source heat exhausting unit 16. On the other hand, when subjected to action by the second fan 158, air enters through the second air inlet window 152 into the projector 10, creating a second hot current 154. The second hot current 154 respectively passes an optical engine 13, a second printed circuit board 142 and a light unit 12, then through a plurality of fan blades 1582 of the second fan 158, finally out of the projector 10.

Due to the action of the second fan 158, the fourth hot current 156 directed through the third fan 162 into the light source heat exhausting unit 16 passes an air duct 161 to absorb the heat generated by the light source 121, so the temperature of the fourth hot current 156 rises rapidly. After passing the light cut 123, the fourth hot current 156 in the prior art of projector 10 is squarely aligned with the second fan 158, then the second hot current 154 is exhausted out of the projector 10 by the action of the fan blades 1582 of the second fan 158.

A shortcoming in the prior art of projector 10 lies in that the heat radiating direction of the fourth hot current 156 is squarely in alignment with the second fan 158 or the second fan hub 1581. The heat generated by the light source 121 of the light unit 12 is the highest in the projector 10, so the heat carried by the fourth hot current 156 after passing the light cut 123 is also the highest. Accordingly, when the fourth hot current 156 exhaust heat directly against the second fan hub 1581, the heat will be collected at the front of the second fan hub 1581 before it passes a plurality of second fan blades 1582 and out of the projector 10, forming a higher average temperature at the front of the second fan hub 1581. As shown in FIG. 5, when the prior art of the projector 10 is operating under room temperature using a light source 12 of approximately 130 Watt, the air temperature at 1 mm position 159 to the front of the center of the second fan hub 1581 will reach as high as 206.6 degrees Fahrenheit, which is higher than the maximum operating temperature of 194 degrees Fahrenheit for the second fan 158, resulting in adverse effects to the motor bearings, control circuits, rotors, stators and such key components in the hub of the second fan 158, thereby reducing the working life and reliability of the second fan 158.

As shown in FIG. 2 that illustrates another prior art of projector 20, comprising a casing 21, a light unit 22, a light

2

source 221, an optical engine 23, a light cut 223, a first printed circuit board 241, a second printed circuit board 242, a cooling device 25, a first air inlet window 251, a second air inlet window 252, a first fan 257, a light source heat exhausting unit 26, a third fan 262, an air outlet 263 and an air inlet 261, which are the same as the first prior art, but different in that the second fan 258, the fan hub 2581 and the fan blades 2582 are installed at a rear part of the light source 221. It has the shortcoming that the heat carried by the fourth hot current 256 is also the highest. As a result, when heat is exhausted in a lower right direction from a specified distance between the fourth hot current 256 and the second fan 258, the heat will be collected at the front of the second fan hub 2581 before passing the second fan blades 2582 and out of the projector 20, forming a higher average temperature at the front of the second fan hub 2581, bringing adverse effects to the motor bearings, control circuits, rotors, stators and such key components in the second fan hub 2581, reducing the working life and reliability of the second fan 258 and the prior art of the projector 20.

## SUMMARY OF INVENTION

The objective of the invention is to provide a cooling device for projector, to direct hot current directly into fan blades, thereby reducing the temperature of the fan hub, and increasing the working life and reliability of the product.

To achieve the above objective, the present invention involves a light source that provides light to the projector device. With an air duct extending from the light source to a second exhaust fan, so air in the vicinity of the light source is exhausted through the second fan blades and out of the projector, wherein the second exhaust fan comprises a second fan hub and a plurality of second fan blades, the second fan hub being located at a center of the second exhaust fan, the second fan blades respectively connected to a periphery of the second fan hub, thereby the air in the vicinity of the second fan blades in the projector is exhausted through the second fan blades and out of the projector. The air duct is in a closed status at the periphery of the light source, concentrating a direction for exhaustion, and the air outlet is squarely aligned with the second fan blades.

## BRIEF DESCRIPTION OF DRAWINGS

For better understanding of the characteristics and technical contents of the present invention, please refer to the following description and drawings.

FIGS. 1 and 2 are respectively section views of two types of prior art of projector.

FIGS. 3 and 4 are respectively section views of a first preferred embodiment and a second preferred embodiment of the present invention of a cooling device for projector.

FIG. 5 is a schematic view of a position at 1 mm to a front of a center of second fan hub in the prior art.

FIG. 6 is view of relationship between a second fan, a light cut and an air outlet in the first preferred embodiment of the invention of a cooling device for projector.

FIG. 7 is a view of relationship between a second fan, a light cut and an air outlet in the second preferred embodiment of the invention of a cooling device for projector.

FIG. 8 is a view of related temperatures of a second fan including a second fan hub and a plurality of second fan blades, a light cut and an air outlet in the prior art of projector.

FIG. 9 is a view of related temperatures of a second fan including a second fan hub and a plurality of second fan

3

blades, a light cut and an air outlet in the present invention of a cooling device for projector.

FIG. 10 is a view of a third preferred embodiment of the present invention including two air outlets.

FIG. 11 is a view of a fourth preferred embodiment of the present invention including three air outlets.

FIG. 12 is a view of a fifth preferred embodiment of the present invention including a ring-shaped air outlet.

DETAILED DESCRIPTION

The following description with drawings of the present invention is used for presentation purpose only, not to limit the present invention.

As shown in FIG. 3 that shows a first preferred embodiment of the present invention of projector 30, comprising a light source 321 of a lighting unit 32 inside a casing 31, producing byway of action of an optical engine 33 a high-brightness and high-contrast projector light ray 322. On a side of the lighting unit 32 is installed a light cut 323 that serves to obstruct the light source 321 of the lighting unit 32. The projector 30 further comprises a first printed circuit board 341, a second printed circuit board 342 and a power supply (not shown in drawing), providing power and control to the projector 30. The light source 321, the first printed circuit board 341, the second printed circuit board 342, the optical engine 33 and the power supply generate heat during their operation.

The projector 30 provides exhausting heat by means of a cooling device 35. The cooling device 35 comprises a plurality of first air inlet windows 351 and a plurality of second air inlet windows 352, where cooling air entering through the first air inlet windows 351 or the second air inlet windows 352 into the projector 30 from outside the projector 30. A first fan 357 for ventilation purpose is installed at an opening on the housing 31 at a lower right corner of the projector 30, having a first fan hub 3571 and a plurality of first fan blades 3572, to exhaust hot air out of the projector 30. Between the housing 31 and the light cut 323, a second fan 358 for ventilation purpose is installed at an opening on a housing 31 at an upper part of the projector 30, having a second fan hub 3581 and a plurality of second fan blades 3582 to expire hot air out of the projector 30, and a light source heat exhausting unit 35, consisting of an air duct 361 surrounding the light source 321, comprises a third fan 362 and an air outlet 363, the third fan 362 being an air guide fan installed at an inlet of the air duct 361, with a direction of air entrance at one side of the first fan 357, a part of the heated air in the vicinity of the first fan 357 and the third fan 362 is expired through the first fan 357 out of the projector 30, while another part thereof is guided into the light source heat exhausting unit 36 through the third fan 362.

The heated air in the first preferred embodiment of the invention flows in a direction as described in the following sequence. The air entering through the second air inlet windows 352 into the projector 30 is sucked by the second fan 358, producing a second hot current 354, the second hot current 354 passes respectively the operating optical engine 33, the second printed circuit board 342 and the lighting unit 32, with temperature rising gradually, then through the second fan blades 3582 of the second fan 358 and out of the projector 30. On the other hand, the air entering through the first air inlet windows 351 into the projector 30 is sucked by the first fan 357, producing a first hot current 353, the first current 353 passes the periphery of the first printed circuit board 341 before it is divided into two parts, a third hot current 355 and a fourth hot current 356. The third hot

4

current 355 passing through the first fan 357 and out of the projector 30, and the fourth hot current 356 passes through the third fan 362 and into the light source heat exhausting unit 36. On the other hand, due to the suction by the second fan 358, the fourth hot current 356 entering the light source heat exhausting unit 36 through the third fan 362 enters an inlet of the air duct 361 to reach the light source 321, absorbing the heat generated by the lighting source 321, when temperature rises rapidly. After passing through the light cut 323, the fourth hot current 356 is aligned with the second fan 358, and is then sucked by the second fan 358 out of the projector 30. The air outlet 363 of the fourth hot current 356 of the invention of projector is aligned with the second fan blade 3582.

Please refer to FIG. 6, the air outlet 363 disclosed in the present invention of projector 30 is aligned with the second fan blades 3582, at a minimum distance from the second fan blades 3582, so the fourth hot current 356 escaping the air outlet 363 can be directly directed into the second fan blades 3582, and rapidly expulsed from the projector 30. Therefore, at the moment when the fourth hot current 356 escapes the air outlet 363, the fourth current 356 is directed directly to the second fan blades 3582 across a minimum distance, and immediately out of the second fan 358, which effectively solves the problem in the conventional model of projector 10 wherein heat is collected at the front of the second fan hub 1581, thereby reducing the air temperature at 1 mm to the front of the center of the second fan hub 1581 from 206.6 degrees to 174 degrees Fahrenheit, as shown in FIG. 5.

FIG. 4 illustrates a second preferred embodiment of the invention of projector 40, having a casing 41, a lighting unit 42, a light source 421, an optical engine 43, a light cut 423, a first printed circuit board 441, a second printed circuit board 442, a power supply (not shown in drawing), a cooling device 45, a first air inlet window 451, a second air inlet window 452, a first fan 457, a light source heat exhausting unit 46, an air duct 461, a third fan 462 and an air outlet 463, which are approximately the same as those of the first preferred embodiment of projector 40, with an only difference that the second fan 458 is installed at the rear of the light source 421. Wherein, due to suction of the second fan 458, the fourth hot current 456 directed through the third fan 462 into the light source heat exhausting unit 46 passes the air duct 461, absorbing the heat generated by the light source 421 in heat convection, therefore the rapidly rising temperature. The air duct 461 extends to the right to the rear air duct 462 and passes the light cut 423, as shown in FIG. 7, the air duct 461 in the present invention extends to the right side, the air duct outlet 463 is aligned with the second fan blades 4582, at a minimum distance from the second fan blades 4582, thereby to induct directly the fourth hot current 456 escaping from the air outlet 463 into the second fan blades 4582 and rapidly out of the projector 40. As described above, the present invention has effectively solved the problem of higher average temperature at the front of the second fan hub 2581 where heat is accumulated before passing the second fan blades 2582.

Please refer to FIG. 8 for comparison of temperature distribution between the present invention and the prior art. Take the prior art of projector 10 as an example to see the temperature distribution of the second fan hub 1581. Since the direction of heat radiation of the fourth hot current 156 of the prior art of projector 10 is aligned with the second fan hub 1581, a higher average temperature T occurs in the zone crossed by oblique lines at the front of the second fan hub 1581. As shown in FIG. 9, the present invention of projector 30 is taken as an example, since the air outlet 363 is aligned

US 6,739,831 B2

5

with the second fan blades **3582**, at a minimum distance from the second fan blades **3582**, therefore the fourth hot current **356** escaping the air outlet **363** can be directed directly into the second fan blades **3582**, and rapidly out of the projector **30**. As a result, temperature is the highest because heat is collected in the region crossed with oblique lines of the second fan blades **3582** squarely aligned with the air outlet **363**, having an average temperature of $T_2$. Meanwhile, since the second fan hub **3581** (region crossed with oblique lines) is not aligned with the air outlet **363**, the heat is not concentrated, and so the temperature is lower, average temperature at $T_1$.

It is known from the above that, the average temperature T affecting the second fan hub **1581** and the second fan blades **1582**, in FIG. **8**, is lower than the average temperature $T_2$ affecting the second fan blades **3582**, but higher than the average temperature $T_1$ affecting the second fan hub **3581**, or $T_1 < T < T_2$. In other words, the present invention discloses the characteristic of the air outlet in direct alignment with the second fan blades and a minimum distance (approximately 1 mm~5 mm) between the air outlet and the second fan blades, to enable direct induction of the fourth hot current escaping the air outlet into the second fan blades and quickly out of the projector **40**. What is disclosed by the present invention is that, high heat and high temperature $T_2$ is collected in the heat-resistant zone of the second fan blades, causing the average temperature $T_1$ of the second fan hub to drop to the average temperature T affecting the second fan hub in the prior art, thereby reducing the operating temperature of motor bearings, control circuits, rotors, stators and such key components in the fan hub, so there will be no adverse effects caused by high temperature, so as to increase the effective life and reliability of the fans and the device.

Please refer to FIG. **10** that illustrates a third preferred embodiment of the prevent invention of projector comprising two air outlets **511, 512**, each aligned with the second fan blades **3582**.

Please refer to FIG. **11** that illustrates a fourth preferred embodiment of the present invention of projector comprising three air outlets **521, 522, 523**, each aligned with the second fan blades **3582**.

Please refer to FIG. **12** that illustrates a fifth preferred embodiment of the present invention of projector comprising a ring-shaped air outlet **531**, the ring-shaped air outlet **531** aligned with the second fan blades **3582**.

It is to be understood that the above description covering some of the preferred embodiments of the present invention

6

shall not be based to restrict or limit the range of applicability of the present invention, and that all modifications or variations made without departing from the spirit of the invention shall be included in the subject claim. Furthermore, the invention has not been seen in any public occasions or publications, therefore, having satisfied the requirements of "applicability, novelty and inventive step" this application is filed for a patent right. Your favorable consideration will be appreciated.

What is claimed is:

1. A cooling device for a projector, comprising:

a light source, providing light to a projector;

a second exhaust fan, comprising a second fan hub and a plurality of second fan blades, said second fan hub being installed at a center of the second exhaust fan, the second fan blades being respectively connected to a periphery of the second fan hub, the second fan hub controlling the second fan blades to rotate, exhausting air from the vicinity of the second fan blades inside the projector through the second fan blades to the outside of the projector; and

an air duct, extending at least from the light source to the second exhaust fan, exhausting air from the vicinity of the light source through the second fan blades to the outside of the projector;

characterized in that, the air duct is in a closed status and is positioned adjacent to a periphery of the light source to concentrate the direction of exhausted air, and the outlet of the air duct is squarely and exclusively aligned with the second fan blades.

2. The cooling device for projector of claim **1**, wherein there is at least one of the air duct, each being aligned with the second fan blades.

3. The cooling device for projector of claim **2**, wherein the outlet is a ring-shaped air outlet.

4. The cooling device for projector of claim **1**, wherein there is a minimum distance between the air outlet and the second fan blades.

5. The cooling device for projector of claim **1**, further comprising at least one light cut which is installed between the air duct and the fan blades of a first fan.

6. The cooling device for projector of claim **1**, wherein an inlet of the duct comprises a third fan for air induction.

\*    \*    \*    \*    \*

# EXHIBIT E


EXCEED YOUR VISION

Licensing Department
Intellectual Propoerty Division
EPSON INNOVATION CENTER    Hirooka Office
80 Harashinden, Hirooka, Shiojiri-shi, Nagano-ken
399-0785    JAPAN
Phone: +81-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 (direct)
Facsimile: +81-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 (direct)

## FACSIMILE TRANSMISSION COVER SHEET

TO:         Coretronic Corporation

ATTEN:      Ms. Carol Wu
            Chief Legal Counsel, Legal Division

FROM:       Kyoichi Ideno
            General manager, Licensing Department

DATE:       March 20, 2007

SUBJ.:      Seiko Epson Corporation v. Coretronic Corporation

*Page 1 + 6*

Sender : TK

20-MAR-2006  19:02                                                      P.01

EPSON INNOVATION CENTER   Hirooka Office
80 Harashinden, Hirooka, Shiojiri-shi, Nagano-ken
399-0785   JAPAN
Phone: +81-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   Facsimile: +81-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



March 20, 2007

Ms. Carol Wu                                                          **By Facsimile and Courier**
Chief Legal Counsel
Legal Division
Coretronic Corporation
No. 2, Ke Bei Rd. 5th, Science Park
Chu-Nan 350, Miao-Li County
Taiwan, R.O.C.

> Re:   Seiko Epson Corporation v. Coretronic
>        Corporation
>        N.D. Cal. No. C06-06946 MJJ

Dear Ms. Wu:

Thank you for your March 6 letter.

Your letter indicates that it is unfortunate that Seiko Epson began suit against Coretronic and Optoma "even though Seiko Epson and Coretronic have been negotiating in good faith for an amicable solution to our dispute." However, Seiko Epson was forced to file suit because, after requesting the September 12 meeting, Coretronic refused to make any compromise to avoid litigation.

Seiko Epson has considered Coretronic's two patents alleged on your March 6 letter. We do not believe your allegation has merit. In order to ensure such our belief and based on the advice of our attorneys, Seiko Epson has decided to commence litigation. We enclose courtesy copy of a Complaint for declaratory judgment that we have filed in Washington, D.C. Please understand that such action is a part of the ordinary course of litigation strategy.

The proposal by Seiko Epson on May 25, 2006 was premised on early resolution. Now the litigation has started, please understand that the situation has changed since then. However, Seiko Epson agrees that a face-to-face meeting will bring both parties substantial

Carol Wu, Esq.
March 20, 2007
Page 2

merit.     Therefore, if Coretronic wishes to reopen negotiations on that understanding, Seiko
Epson proposes a meeting, without attorneys, on April 10 or 11, 2007 in Tokyo.

Please let me have your response by March 27, 2007.

Very truly yours,

Masataka Kamiyanagi
Executive Officer
Intellectual Property Division
SEIKO EPSON CORPORATION

Enclosure:
          Complaint

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEIKO EPSON CORPORATION, | ) |
| | ) |
| 3-5, Owa 3-chome | ) |
| Suwa-shi | ) |
| Nagano-ken, 392-8502 | ) |
| Japan, | ) |
| | ) |
| Plaintiff, | )  Case No.: _____ |
| | ) |
| v. | ) |
| | ) |
| CORETRONIC CORPORATION, | ) |
| | ) |
| No.11, Li-Hsing Road | ) |
| Science Park | ) |
| Hsinchu, Taiwan 300 | ) |
| Republic of China, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Seiko Epson Corporation ("Seiko Epson"), for its Complaint against Coretronic

Corporation ("Coretronic"), states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Seiko Epson is a company organized under the laws of Japan, with a place of

business at 3-5, Owa 3-chome, Suwa-shi, Nagano-ken, 392-8502 Japan.

2.      Upon information and belief, Coretronic is a company organized under the laws of

the Republic of China, with a place of business at No.11, Li-Hsing Road, Science Park, Hsinchu,

Taiwan 300, Republic of China.

3.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201,

concerning issues arising under the patent laws of the United States, Title 35, United States

Code. Jurisdiction is conferred on this Court pursuant to 35 U.S.C. § 293 and 28 U.S.C.

§§ 1331, 1338(a), and 2201.

4.    Venue is proper in this district pursuant to 35 U.S.C. § 293 and 28 U.S.C. § 1391.

## FACTS

5.    Upon information and belief, Coretronic owns U.S. Patent Nos. 6,742,899 B1 (the

"899 Patent") and 6,739,831 B2 (the "831 Patent") and has made no designation pursuant to 35

U.S.C. § 293 with respect to the 899 and 831 Patents.

6.    Seiko Epson manufactures projectors that are sold in the United States.

7.    By letter dated March 6, 2007, an officer of Coretronic stated to Seiko Epson that

Coretronic had "determined that Seiko Epson projectors have infringed and are infringing [the

899 and 831] Coretronic patents" and indicated an intent to assert such claims against Seiko

Epson in court.

8.    Seiko Epson does not infringe and has not infringed the 899 or 831 Patents

directly, contributorily or by inducement.

9.    One or more claims of the 899 and 831 Patents are invalid for failure to satisfy the

requirements of Title 35 of the United States Code, including but not limited to 35 U.S.C.

§§ 102, 103 and/or 112.

10.    Accordingly, an actual controversy exists between Coretronic and Seiko Epson.

WHEREFORE, Seiko Epson prays that this Court:

A.    Adjudge and decree that Seiko Epson is not infringing and has not infringed any

claim of the 899 Patent;

B.    Adjudge and decree that Seiko Epson is not infringing and has not infringed any

claim of the 831 Patent;

2

C.   Adjudge and decree that one or more claims of the 899 Patent are invalid;

D.   Adjudge and decree that one or more claims of the 831 Patent are invalid;

E.   Award Seiko Epson its attorneys' fees; and

F.   Award Seiko Epson such further relief as this Court deems just and proper.

### JURY DEMAND

Seiko Epson Corporation hereby demands, pursuant to Fed. R. Civ. P. 38, a trial by jury

of all issues so triable.

DATED this 17th day of March 2007.


Respectfully submitted,

SEIKO EPSON CORPORATION


William J. Uttenmohlen, D.C. Bar No. 384902
OLIFF & BERRIDGE, PLC
277 South Washington Street
Suite 500
Alexandria, VA 22314
Telephone: 703-836-6400
Facsimile: 703-836-2787

Attorney for Plaintiff Seiko Epson Corporation

3

## CERTIFICATE REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 7.1(a)

I, the undersigned, counsel of record for Seiko Epson Corporation, certify that to the best of my knowledge and belief, Seiko Epson has no parent corporations and that no publicly held corporation owns more than 10% of Seiko Epson's stock, other than Aoyama Kigyo Kabushiki Kaisha.

William J. Utermohlen

Attorney for Seiko Epson Corporation

4

# EXHIBIT F

1   YITAI HU (State Bar No. 248085) (yhu@akingump.com)
    ELIZABETH H. RADER (State Bar No. 184963) (erader@akingump.com)
2   AKIN GUMP STRAUSS HAUER & FELD LLP
    2 Palo Alto Square
3   3000 El Camino Real, Suite 400
    Palo Alto, California  94306
4   Telephone:      650-838-2000
    Facsimile:      650-838-2001
5

6   Attorneys for Defendant and Counterclaimant
    CORETRONIC CORPORATION
7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11  SEIKO EPSON CORPORATION, a          )   Case No. C 06-6946 MJJ
    Japanese corporation,               )
12                                      )   **CORETRONIC CORPORATION'S**
                    Plaintiff,          )   **AMENDED ANSWER AND**
13                                      )   **COUNTERCLAIMS**
              vs.                       )
14                                      )   **DEMAND FOR JURY TRIAL**
    CORETRONIC CORPORATION, a           )
15  Taiwanese corporation, and OPTOMA   )
    TECHNOLOGY, INC., a California       )
16  corporation,                        )
                                        )
17                  Defendants.         )
                                        )
18  _____ )
                                        )
19  CORETRONIC CORPORATION a            )
    Taiwanese corporation,              )
20                                      )
                  Counterclaimant,      )
21                                      )
              vs.                       )
22                                      )
    SEIKO EPSON CORPORATION, a          )
23  Japanese corporation,               )
                                        )
24                  Counterdefendant.   )
                                        )
25

26

27

28

CORETRONIC CORPORATION'S AMENDED                                CASE NO. C:06-6946 MJJ
ANSWER AND COUNTERCLAIMS

1     Coretronic Corporation ("Coretronic"), by its attorneys, submits its Amended Answer and

2  Counterclaims in response to the Complaint of Seiko Epson Corporation ("SEC") as follows:

3                                     **PARTIES**

4        1.     Coretronic admits, upon information and belief, that SEC is a company organized under

5  the laws of Japan, with a place of business at 3-5 Owa-chome, Suwa-shi, Nagano-ken, 392-8502, Japan.

6        2.     Coretronic admits that it is a company organized under the laws of Taiwan, with a place

7  of business at No. 11, Li-Hsing Road, Science Park, Hsinchu, Taiwan 300, R.O.C.  Except as

8  specifically admitted, Coretronic denies the remaining allegations in paragraph 2.

9        3.     Coretronic admits, upon information and belief, that Optoma Technology, Inc.

10  ("Optoma") is a California corporation and has a principal place of business at 715 Sycamore Drive,

11  Milpitas CA 95035.  Except as specifically admitted, Coretronic denies the remaining allegations in

12  paragraph 3.

13                           **JURISDICTION AND VENUE**

14        4.     Coretronic admits that Plaintiff SEC claims patent infringement under the patent laws of

15  the United States, Title 35 of the United States Code.

16        5.     Coretronic admits that this Court has subject matter jurisdiction of this matter under the

17  patent laws of the United States of America.  To the extent Plaintiff alleges that this Court has personal

18  jurisdiction over co-defendant Optoma, however, Coretronic is without knowledge or information

19  sufficient to form a belief as to the truth of those allegations and therefore denies such allegations.

20        6.     Coretronic admits that venue is proper with respect to itself only.  Except as specifically

21  admitted, Coretronic denies the remaining allegations in paragraph 6.

22                          **INTRADISTRICT ASSIGNMENT**

23        7.     Paragraph 7 does not contain any allegation of fact that requires a response from

24  Coretronic.

25

26

27

28

CORETRONIC CORPORATION'S AMENDED
ANSWER AND COUNTERCLAIMS                                            CASE NO. C:06-6946 MJJ

## Count I

8.      Coretronic incorporates by reference paragraphs 1 through 7 above as though fully set forth herein.

9.      Coretronic admits that United States Patent No. 6,203,158 ("the '158 patent") was issued on March 20, 2001, and that SEC is the named assignee on the face of the patent. Coretronic is without knowledge or information sufficient to form a belief as to the remainder of the allegations in paragraph 9 and on that basis denies those allegations.

10.     Coretronic admits that United States Patent No. 6,402,324 ("the '324 patent") was issued on June 11, 2002, and that SEC is the named assignee on the face of the patent. Coretronic is without knowledge or information sufficient to form a belief as to the remainder of the allegations in paragraph 10 and on that basis denies those allegations.

11.     Coretronic admits that United States Patent No. 6,527,392 ("the '392 patent") was issued on March 4, 2003, and that SEC is the named assignee on the face of the patent. Coretronic is without knowledge or information sufficient to form a belief as to the remainder of the allegations in paragraph 11 and on that basis denies those allegations.

12.     Coretronic admits that United States Patent No. 6,558,004 ("the '004 patent") was issued on May 6, 2003, and that SEC is the named assignee on the face of the patent. Coretronic is without knowledge or information sufficient to form a belief as to the remainder of the allegations in paragraph 12 and on that basis denies those allegations.

13.     Coretronic admits that United States Patent No. 6,644,817 ("the '817 patent") was issued on November 11, 2003, and that SEC is the named assignee on the face of the patent. Coretronic is without knowledge or information sufficient to form a belief as to the remainder of the allegations in paragraph 13 and on that basis denies those allegations.

14.     Coretronic admits that according to the titles on the face of the patents, the '158, '004, and '817 patents are directed to a "Projector," the '324 patent is directed to a "Projection Display Device," and the '392 patent is directed to "Light Source Apparatus, Light Source, Lamp Unit and Projector." Except as specifically admitted, Coretronic denies the remaining allegations in paragraph 14.

3

1    15.    Denied.

2    16.    Denied.

3    17.    Coretronic admits that it has knowledge of the Seiko Epson Patents at least since

4    February 12, 2007, the date it received SEC's Complaint by Federal Express.   Except as specifically

5    admitted, Coretronic denies the remaining allegations in paragraph 17.

6    18.    Coretronic is without knowledge or information sufficient to form a belief as to the truth

7    of the allegations contained in paragraph 18 and therefore denies such allegations.

8                            **AFFIRMATIVE DEFENSE**

9                          **First Affirmative Defense**

10                          **(Non-infringement)**

11    19.    Coretronic does not and has not infringed, either directly, contributorily, or by

12    inducement, any claim of the '158, '324, '392, '004, or '817 patents.

13                          **Second Affirmative Defense**

14                          **(Invalidity)**

15    20.    The '158, '324, '392, '004, and '817 patents are invalid because they fail to meet the

16    requirements of patentability of 35 U.S.C. §§ 102, 103, and/or 112.

17                          **Third Affirmative Defense**

18                          **(Laches)**

19    21.    All or some of SEC's claims are barred by the equitable doctrine of laches.

20                          **Fourth Affirmative Defense**

21                          **(Marking)**

22    22.    Upon information and belief, all or some of SEC's claims for damages are barred for

23    failure to mark under 35 U.S.C. § 286.

24                          **Fifth Affirmative Defense**

25                          **(Unenforceability)**

26    23.    SEC's allegation of infringement of the '158 patent is barred because the '158 patent is

27    unenforceable pursuant to 37 C.F.R. § 1.56 and the doctrine of inequitable conduct.

28    Upon information and belief, Epson sold, offered for sale, and shipped a projector known as the ELP-

4

1  3000, at least as early as March 1995, more than four years before the filing of the application that led to

2  the '158 patent. The existence of, and sale or offer for sale, of the ELP-3000 would have been material

3  to the examination of one or more claims of the '158 patent and/or its predecessor applications. The

4  inventors of, prosecuting attorneys of, and/or other individuals subject to the requirement of 37 C.F.R. §

5  1.56(c) in connection with the '158 patent and its predecessor applications, must have been aware of

6  Epson's ELP-3000 projectors ("the ELP-3000") and that they were offered for sale more than one year

7  prior to the submission of the application that resulted in the '158 patent. Nevertheless, none of them

8  disclosed the existence of the ELP-3000 and sale or offer for sale of the ELP-3000 to the Patent &

9  Trademark Office during the prosecution of the '158 patent or its predecessor applications. Upon

10 information and belief, the failure to disclose this material information was knowing, willful, and done

11 with the intent to deceive the PTO into issuing the '158 patent. As a result, the '158 patent is

12 unenforceable.

13        24.    SEC's allegation of infringement of the '392 patent is barred because the '392 patent is

14 unenforceable pursuant to 37 C.F.R. § 1.56 and the doctrine of inequitable conduct.

15 Upon information and belief, Epson sold, offered for sale, and shipped a projector known as the ELP-

16 3000, at least as early as March 1995, approximately four years before the filing of the '392 patent. The

17 existence of, and the sale or offer for sale, of the ELP-3000 would have been material to the examination

18 of one or more claims of the '392 patent and its application. Upon information and belief, the inventors

19 of, prosecuting attorneys of, and/or other individuals subject to the requirement of 37 C.F.R. § 1.56(c)

20 with regards to the '392 patent and its application were aware of the ELP-3000 projector and

21 components thereof, including the internal light source unit, and that they were offered for sale more

22 than one year prior to the submission of the application that resulted in the '392 patent. Nevertheless,

23 none of them disclosed the existence of the ELP-3000 and the sale or offer for sale of the ELP-3000 to

24 the Patent & Trademark Office during the prosecution of the '392 patent or its predecessor applications.

25 Upon information and belief, the failure to disclose this material information was knowing, willful, and

26 done with the intent to deceive the PTO into issuing the '392 patent. As a result, the '392 patent is

27 unenforceable.

28

CORETRONIC CORPORATION'S AMENDED
ANSWER AND COUNTERCLAIMS

CASE NO. C:06-6946 MJJ

1    ## COUNTERCLAIMS

2    Coretronic counterclaims against SEC as follows:

3    ### PARTIES

4    1.    Upon information and belief, SEC is a company organized under the laws of Japan, with

5    a place of business at 3-5 Owa-chome, Suwa-shi, Nagano-ken, 392-8502, Japan.

6    2.    Coretronic is a company organized under the laws of Taiwan, with a place of business at

7    No. 11, Li-Hsing Road, Science Park, Hsinchu, Taiwan 300, R.O.C.

8    ### JURISDICTION

9    3.    This counterclaim arises under the patent laws of the United States, Title 35, United

10    States Code. The jurisdiction of this Court is proper under 35 U.S.C. §§ 271, *et seq*., and 28 U.S.C. §§

11    1331, 1338, 2201, and 2202.

12    4.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

13    5.    SEC has sued Coretronic for patent infringement of the '158, '324, '392, '004, and '817

14    patents. Coretronic denies infringement of those patents and alleges that the claims of those patents are

15    invalid. Coretronic also alleges, as set forth below, that SEC has infringed and continues to infringe

16    Coretronic's U.S. Patent Nos. 6,742,899 and 6,739,831. As such, an actual controversy exists between

17    the parties and Coretronic is entitled to injunctive and monetary relief on the first and second

18    counterclaims and declaratory relief on the third, fourth and fifth counterclaims.

19    ### CLAIMS FOR RELIEF

20    #### First Counterclaim

21    #### (Infringement of U.S. Patent No. 6,742,899)

22    6.    Coretronic incorporates by reference the allegations of paragraphs 1-5.

23    7.    U.S. Patent No. 6,742,899 B1 ("the '899 patent"), entitled "Cooling Apparatus for

24    Projector Casing," was duly and legally issued by the United States Patent and Trademark office on June

25    1, 2004. A true and correct copy of the '899 patent is attached hereto as Exhibit A.

26    8.    Coretronic is the owner of all right, title, and interest in and to the '899 patent.

27    9.    On information and belief, SEC has infringed and is continuing to infringe the '899

28    patent by making, using, offering to sell, sell and/or importing into the United States projectors that are

1   encompassed by claims of the '899 patent, and by inducing others to infringe the '899 patent. On

2   information and belief, SEC will continue to infringe the '899 patent unless enjoined by this Court.

3       10.    SEC has had knowledge of the '899 patent, at least since March 6, 2007, and has

4   therefore infringed, and continues to infringe, the '899 patent willfully and deliberately, thereby

5   rendering this case exceptional under the United States patent laws.

6                        **Second Counterclaim**

7              **(Infringement of U.S. Patent No. 6,739,831)**

8       11.    Coretronic incorporates by reference the allegations of paragraphs 1-5.

9       12.    U.S. Patent No. 6,739,831 B2 ("the '831 patent"), entitled "Cooling Device for

10  Projector," was duly and legally issued by the United States Patent and Trademark office on May 25,

11  2004. A true and correct copy of the '831 patent is attached hereto as Exhibit B.

12      13.    Coretronic is the owner of all right, title, and interest in and to the '831 patent.

13      14.    On information and belief, SEC has infringed and is continuing to infringe the '831

14  patent by making, using, offering to sell, sell and/or importing into the United States projectors that are

15  encompassed by claims of the '831 patent, and by inducing others to infringe the '831 patent. On

16  information and belief, SEC will continue to infringe the '831 patent unless enjoined by this Court.

17      15.    SEC has had knowledge of the '831 patent, at least since March 6, 2007, and has

18  therefore infringed, and continues to infringe, the '831 patent willfully and deliberately, thereby

19  rendering this case exceptional under the United States patent laws.

20                        **Third Counterclaim**

21            **(Declaratory Judgment of Non-Infringement)**

22      16.    Coretronic incorporates by reference the allegations of paragraphs 1-5.

23      17.    Coretronic does not infringe directly, contributorily or by inducement any claim of the

24  '158, '324, '392, '004, or '817 patents.

25                        **Fourth Counterclaim**

26              **(Declaratory Judgment of Invalidity)**

27      18.    Coretronic incorporates by reference the allegations of paragraphs 1-5.

28      19.    The '158, '324, '392, '004, and '817 patents are invalid because they fail to satisfy the

7

1    conditions for patentability specified under 35 U.S.C. §§ 102, 103, and/or 112.

2                          **Fifth Counterclaim**

3              **(Declaratory Judgment of Unenforceability)**

4        20.    Coretronic incorporates by reference the allegations of paragraphs 1-5.

5        21.    The '158 patent is unenforceable due to inequitable conduct during its prosecution and/or

6    its predecessor applications, as set forth above in paragraph 23 of Coretronic's Answer.

7        22.    The '392 patent is unenforceable due to inequitable conduct during its prosecution and/or

8    its application, as set forth above in paragraph 24 of Coretronic's Answer.

9

10                          **PRAYER FOR RELIEF**

11        **WHEREFORE,** Coretronic seeks the following relief:

12        A.    Adjudge and decree that SEC has directly and/or indirectly infringed one or more

13    claims of the '899 and/or '831 patents;

14        B.    Preliminarily and permanently enjoin SEC, its officers, agents, servants,

15    employees, attorneys, and those persons in active concert or participation with them who receive actual

16    notice of the order by personal service or otherwise, from continuing to infringe the '899 and '831

17    patents;

18        C.    Order SEC to pay damages sustained by Coretronic by reason of SEC's

19    infringement of the '899 and '831 patents, in an amount to be proved at trial together with interest and

20    costs;

21        D.    Adjudge and decree that SEC's infringement of the '899 and '831 patents has

22    been and is willful and deliberate, and award Coretronic increased damages pursuant to 35 U.S.C. § 284;

23        E.    Dismiss SEC's Complaint with respect to Coretronic with prejudice;

24        F.    Declare that Coretronic has not infringed any claim of the '158, '324, '392, '004,

25    and '817 patents;

26        G.    Declare that the '158, '324, '392, '004, and '817 patents are invalid;

27        H.    Declare that the '158 and '392 patents are unenforceable;

28        I.    Adjudge and decree that this is an exceptional case under 35 U.S.C. § 285 and

CORETRONIC CORPORATION'S AMENDED
ANSWER AND COUNTERCLAIMS                                    CASE NO. C:06-6946 MJJ

1    award Coretronic's costs, expenses, and attorneys' fees in this action; and

2        J.      Any such other and further relief as the Court may deem appropriate.

3

4    Dated:  March 21, 2007              AKIN GUMP STRAUSS HAUER & FELD LLP

5
                                         By:_____/s/_____
6                                                        Elizabeth H. Rader

7                                        Attorneys for Defendant and Counterclaimant
                                         CORETRONIC CORPORATION
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CORETRONIC CORPORATION'S AMENDED
ANSWER AND COUNTERCLAIMS                                          CASE NO. C:06-6946 MJJ

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Coretronic Corporation respectfully demands a trial by jury on all issues so triable.

Dated:  March 21, 2007

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By:_____/s/_____
                         Elizabeth H. Rader

Attorneys for Defendant and Counterclaimant
CORETRONIC CORPORATION

CORETRONIC CORPORATION'S AMENDED
ANSWER AND COUNTERCLAIMS

CASE NO. C:06-6946 MJJ

# EXHIBIT G

1   JAMES A. OLIFF (*Admitted Pro Hac Vice*), joliff@oliff.com
    JOHN W. O'MEARA (*Admitted Pro Hac Vice*), jomeara@oliff.com
2   WILLIAM J. UTERMOHLEN (*Admitted Pro Hac Vice*), wutermohlen@oliff.com
    TAMIR D. DAMARI (*Admitted Pro Hac Vice*), tdamari@oliff.com
3   **OLIFF & BERRIDGE, PLC**
    277 South Washington St., Suite 500
4   Alexandria, Virginia 22314
    Tel:  (703) 836-6400; Fax:  (703) 836-2787
5
    **LOCAL COUNSEL**:
6   SUSAN VAN KEULEN, CA Bar No. 136060, svankeulen@thelen.com
    CHRISTOPHER L. OGDEN, CA Bar No. 235517, cogden@thelen.com
7   **THELEN REID BROWN RAYSMAN & STEINER, LLP**
    225 West Santa Clara Street, Suite 1200
8   San Jose, CA 95113
    Tel: (408) 292-5800; Fax (408) 287-8040
9
    Attorneys for Plaintiff/Counterdefendant Seiko Epson Corporation
10
                    UNITED STATES DISTRICT COURT
11               FOR THE NORTHERN DISTRICT OF CALIFORNIA
                        (San Francisco Division)
12
    SEIKO EPSON CORPORATION,            )    Case No. C06-06946 MJJ
13                                       )
                                         )    **MOTION TO DISMISS OR, IN THE**
14              Plaintiff,               )    **ALTERNATIVE, TO STAY**
                                         )    **CORETRONIC'S FIRST AND**
15          v.                           )    **SECOND COUNTERCLAIMS**
                                         )
16   CORETRONIC CORPORATION and          )    Date: May 15, 2007
     OPTOMA TECHNOLOGY, INC.,            )    Time: 9:30 a.m.
17                                       )    Place: San Francisco
                Defendants.              )         Courtroom 11, 19th Floor
18                                       )
     _____ )
19   CORETRONIC CORPORATION and          )    Before: Hon. Martin J. Jenkins
     OPTOMA TECHNOLOGY, INC.,            )
20                                       )
                                         )
21              Counterplaintiffs,       )
                                         )
22   v.                                  )
                                         )
23   SEIKO EPSON CORPORATION,            )
                                         )
24              Counterdefendant.        )
     _____ )

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that, at 9:30 a.m. on May 15, 2007 in Courtroom 11, or as soon thereafter as may be heard in the above-entitled court, located at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff and Counterdefendant Seiko Epson Corporation will move to dismiss or, in the alternative, to stay Coretronic Corporation's First and Second Counterclaims.

**I.    INTRODUCTION**

By Amended Counterclaims filed on March 21, 2007, Coretronic Corporation asserted against Seiko Epson Corporation two U.S. patents, No. 6,742,899 and No. 6,739,831.[1]  Such assertion was in reaction to Epson's March 19, 2007 filing of a declaratory judgment action in the District of Columbia seeking a determination of non-infringement and invalidity as to those Coretronic patents.  Accordingly, the present motion is brought pursuant to the first-to-file rule to dismiss or, in the alternative, to stay Coretronic's counterclaims with respect to the 899 and 831 Patents.[2]

The first-to-file rule is a general rule of comity, dictating that, where a party files a second action raising the same issues presented in an earlier-filed action, the first action will take precedence, unless there is a "sound reason that would make it unjust or inefficient to continue the first-filed action."  *Electronics for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1347 (Fed. Cir. 2005)  *(quoting Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 937-38 (Fed. Cir. 1993);

---

[1] The short forms "Epson," "Coretronic," "899 Patent," and "831 Patent," will be used to refer to the referenced parties and patents.

[2] The time for Epson to reply to Coretronic's remaining counterclaims is tolled during the pendency of this motion.  *Batdorf v. Trans Union*, 2000 WL 635455, *5 (N.D. Cal. 2000); *Finnegan v. University of Rochester Medical Center*, 180 F.R.D. 247, 249 (W.D.N.Y. 1998).

1  reversing for abuse of discretion the dismissal of a first-filed declaratory judgment action).  No

2  such exception to the first-to-file rule applies here, where, after a long pattern of dilatory

3  negotiation and litigation tactics on the part of Coretronic, Epson sought to force a resolution to

4  meritless infringement claims made by Coretronic.  Moreover, the patents asserted by

5  Coretronic are unrelated to the patents previously asserted by Epson, being directed to different

6  inventions, made by different inventors and asserted against different products than the patents

7  Epson has asserted.  Adding those two additional patents to what is already a five-patent case

8  would unduly burden the Court, the jury and the parties.

9  **II.    ARGUMENT**

10      **A.    Factual Background**

11      From 2004 through May 2006, Epson and Coretronic engaged in a series of eleven

12  meetings, attempting to negotiate a license agreement covering various Epson projector patents.

13  *See* Declaration of Toshihiko Kobayashi, ¶ 2 ("Kobayashi Dec.").  At the last such meeting, on

14  May 25, 2006, which Epson understood would be a last attempt to reach an agreement, both

15  companies made new settlement proposals.  The May 25 proposals, however, left the parties a

16  substantial distance from reaching an agreement.  Moreover, on May 30, 2006, Coretronic

17  withdrew the settlement proposal made at the May 25 meeting, reverting to an earlier, more

18  limited, proposal.  Kobayashi Dec. ¶¶ 2-3.

19      On July 31, 2006, Epson's counsel forwarded a letter to Coretronic indicating that

20  Epson would take steps to protect its intellectual property rights, including by initiating legal

21  action, unless Coretronic responded by August 9, 2006 indicating its willingness to continue

22  the negotiations by making a substantial increase in its licensing offer.  On August 9,

23

24                                          3

1    Coretronic's counsel responded by proposing a further meeting.  Epson accepted the proposed

2    meeting on the condition that it include a substantial new offer by Coretronic.  However, when

3    the meeting occurred on September 12, 2006, Coretronic made no new offer.  Kobayashi

4    Dec. ¶¶ 4-6.

5         Epson subsequently filed this suit against both Coretronic and its U.S. subsidiary,

6    Optoma Technology, Inc., on November 6, 2006.  Service was made on Optoma on

7    November 7.  Epson proposed that Coretronic (a Taiwanese company) agree to accept service,

8    offering, in exchange, an extension of time for Optoma to respond, but Coretronic rejected that

9    proposal.  Optoma (represented by the same counsel as Coretronic) then waited until

10   January 16, 2007, six days before the deadline for the Rule 26(f) conference, to object to

11   proceeding before Magistrate Judge Brazil, thus causing reassignment of the case and further

12   delay in its progress.

13        Service on Coretronic in Taiwan by letters rogatory being a multi-month process,

14   service was also made on Coretronic by the clerk by Federal Express on February 7.

15   Coretronic filed its Answer in this case on March 5, asserting inequitable conduct

16   counterclaims as to two of the asserted patents.  The present Counterclaims were not asserted.

17        The next day, March 6, Coretronic wrote to Epson alleging that Epson was infringing

18   Coretronic's 899 and 831 Patents:  "We have determined that Seiko Epson projectors have

19   infringed and are infringing these Coretronic patents."  The 899 and 831 Patents were issued on

20   May 25, 2004 and June 1, 2004, respectively, but had not been mentioned by Coretronic in any

21   of the parties' prior license negotiations.  Coretronic Corporation's Amended Answer and

22   Counterclaim, p. 7, ¶¶ 10 & 15.  Coretronic's letter also proposed further settlement

23

24                                          4

1    negotiations.  Kobayashi Dec. ¶ 7.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**Motion to Dismiss or Stay Coretronic's First and Second Counterclaims**

**Case No. C06-06946 MJJ**

Rather than subjecting itself, and its distributors, to uncertainty over the status of its U.S. projectors and permitting Coretronic to use its claims of patent infringement as purported settlement leverage, without subjecting those claims to adjudication by a court, Epson filed a declaratory judgment action on March 19 in the United States District Court for the District of Columbia pursuant to 35 U.S.C. § 293.[3]

## B.    <u>Legal Standard</u>

The Federal Circuit applies its own law, and not that of the regional circuit, to "[t]he question of whether a properly brought declaratory action to determine patent rights should yield to a later-filed suit for patent infringement." *Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993).  *See also Laboratory Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004) ("injunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts are reviewed under the law of the Federal Circuit"); *Electronics for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1345-46 (Fed. Cir. 2006).

The Federal Circuit has long followed the "general rule . . . that 'as a principle of sound judicial administration, the first suit should have priority,' absent special circumstances." *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).  The Federal Circuit has emphasized that there must be "well-founded reasons" for giving precedence to a later-filed patent infringement suit in favor of a first-filed declaratory judgment action and that "in the

---

[3] Section 293 provides that where a patentee does not file a written designation with the Patent and Trademark Office stating the name and address of a person residing within the United States on whom process may be served "of proceedings affecting the patent or rights thereunder," "the United States District Court for the District of Columbia shall have jurisdiction."  Here, Coretronic is a Taiwanese company that did not file such a notice and Coretronic's threat of assertion of U.S. patents was made in a letter sent from Taiwan to Japan.

1  usual circumstance" the declaratory judgment action must be permitted to proceed.  *See Capo,*

2  *Inc. v. Dioptics Med. Prods.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004); *Genentech, supra*, 998

3  F.2d at 937.

4      Most recently, in *Electronics for Imaging, Inc. v. Coyle,* 394 F.3d 1341 (Fed.

5  Cir. 2006), the Federal Circuit considered the weight to be given to an allegation that a

6  declaratory judgment suit is "anticipatory" of the later-filed patent infringement suit.  In some

7  circuits, including the Ninth Circuit, "anticipatory" suits have been treated as potential

8  situations in which an exception may be made to the first-to-file rule.

9      As a threshold matter, an "anticipatory" exception to the first-to-file rule appears to be

10  in conflict with the policies underlying the Declaratory Judgment Act (28 U.S.C. § 2201).  In

11  order for a declaratory judgment action to be constitutional, there must be an "actual

12  controversy" between the parties.  *See MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764

13  (2007).  Accordingly, before a declaratory judgment action can be filed, there must first be an

14  assertion by the patentee of "rights under a patent based on certain identified ongoing or

15  planned activity of another party."  *SanDisk Corp. v. STMicroelectronics, Inc.*, No. 05-1300,

16  slip op. at 15 (Fed. Cir. Mar. 26, 2007).  Once the patentee has made such an assertion, it will

17  be either explicit or implicit that the threat will be followed, if resisted, by enforcement in the

18  form of a patent infringement suit.[4]  Accordingly, it can always be contended that a declaratory

19  judgment suit is "anticipatory" of the patent infringement suit, the threat of which provided the

20  _____

    [4]    To be sure, any time parties are in negotiation over patent rights, the  possibility of a
21  lawsuit looms in the background. No patent owner with any  sense would open
    negotiations by assuring his opposite party that he does not  intend to enforce his patent
22  rights under any circumstances. The threat of  enforcement -- either directly by the
    patentee or indirectly by a third party to whom the patentee licenses or sells the patent --
    is the entire source of the patentee's bargaining power.

23  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996).

24

1   basis for the filing of the declaratory judgment action.  Taken to its logical conclusion, this

2   "exception" would swallow the rule.  Nor is it clear that the "anticipatory" suit exception serves

3   any useful purpose.  While it is asserted that such an exception prevents "forum shopping" by

4   the potential patent infringement defendant, it is not apparent that there is any lesser merit to

5   such "forum shopping" as compared to the forum shopping that is implicit in a non-declaratory

6   judgment plaintiff's choice of a forum, subject to the constraints imposed by jurisdictional and

7   other legal requirements.

8          In any event, those courts that do recognize the "anticipatory" suit exception to the first-

9   to-file rule define it narrowly, as only being applicable when "the plaintiff in the first-filed

10  action filed suit on receipt of **specific concrete indications** that a suit by the defendant was

11  **imminent**."  *M.D. Beauty, Inc. v. Gross*, 2003 WL 24056263, *3 (N.D. Cal. 2003) (emphasis

12  added).  *See also, e.g., Sony Computer Entertainment America, Inc. v. America Medical*

13  *Response, Inc.*, 2007 WL 781969 (N.D. Cal. 2007); *Ward v. Follett Corp.*, 158 F.R.D. 645, 649

14  (N.D. Cal. 1994).

15         In *Electronics for Imaging, Inc. v. Coyle*, the Federal Circuit indicated that while "a

16  district court may consider whether a party intended to preempt another's infringement suit

17  when ruling on the dismissal of a declaratory action" that is "merely one factor in the analysis."

18  The Federal Circuit noted that its precedent "favors the first-to-file rule in the absence of

19  circumstances making it 'unjust or inefficient' to permit a first-filed action to proceed to

20  judgment," and held that such circumstances were not established by the district court's finding

21  that the declaratory judgment plaintiff knew that the other party's suit was imminent.  394 F.3d

22  at 1347-48.

23

24                                          8

1    ### C.    Analysis

2        Applying these principles, there is no reason to depart from the first-to-file rule in this

3    case.  The declaratory judgment action filed in the District of Columbia was filed two days

4    before the Amended Counterclaims at issue here.  The D.C. suit was not anticipatory, as the

5    March 6 assertion of infringement by Coretronic was immediately after Coretronic elected not

6    to assert its patents in its initial Answer and Counterclaims, filed on March 5, and the March 6

7    letter did not make any specific statement about imminent commencement of suit.

8        Moreover, far from requiring an exception to be made to the first-to-file rule, efficiency

9    dictates that the Coretronic patents not be addressed in this suit.  The patents asserted by

10   Coretronic are directed to different inventions than those at issue in Epson's patents.  The

11   Coretronic inventors and patent personnel are all located in Taiwan and, on information and

12   belief, did their work primarily in Chinese.  The patents are being asserted against Epson

13   products, which are obviously different than the products that infringe Epson's patents asserted

14   against Coretronic.  Adding those two additional patents, with their associated issues of claim

15   construction, infringement, and invalidity, to what is already a five-patent case, would tend to

16   confuse the jury and would unduly burden the Court and the parties.

17   ### III.    CONCLUSION

18       Accordingly, the Court should adhere to the first-to-file rule and dismiss Coretronic's

19   First and Second Counterclaims.  Alternatively, adjudication of those counterclaims should be

20   stayed until after resolution of the first-filed action in the District of Columbia.

21

22

23

24
                                  9

**Motion to Dismiss or Stay Coretronic's First and Second Counterclaims**

**Case No. C06-06946 MJJ**

1    DATED this 9th day of April, 2007.

2                          Respectfully submitted,

3                              /s/

4                          _____
                           James A. Oliff *(Admitted Pro Hac Vice)*
5                          John W. O'Meara *(Admitted Pro Hac Vice)*
                           William J. Utermohlen *(Admitted Pro Hac Vice)*
6                          Tamir D. Damari *(Admitted Pro Hac Vice)*
                           OLIFF & BERRIDGE, PLC
7                          277 South Washington Street
                           Suite 500
8                          Alexandria, VA  22314
                           Telephone:  703-836-6400
9                          Facsimile:  703-836-2787

10                         Susan van Keulen, CA Bar No. 136060
                           Christopher L. Ogden, CA Bar No. 235517
11                         THELEN REID BROWN RAYSMAN & STEINER  LLP
                           225 West Santa Clara Street
12                         Suite 1200
                           San Jose, CA 95113

13

14                         Attorneys for Plaintiff and Counterdefendant
                           Seiko Epson Corporation

15

16

17

18

19

20

21

22

23

24

**Motion to Dismiss or Stay Coretronic's First and Second Counterclaims**
**Case No. C06-06946 MJJ**

# EXHIBIT H

JAMES A. OLIFF (*Admitted Pro Hac Vice*), joliff@oliff.com
JOHN W. O'MEARA (*Admitted Pro Hac Vice*), jomeara@oliff.com
WILLIAM J. UTERMOHLEN (*Admitted Pro Hac Vice*), wutermohlen@oliff.com
TAMIR D. DAMARI (*Admitted Pro Hac Vice*), tdamari@oliff.com
**OLIFF & BERRIDGE, PLC**
277 South Washington St., Suite 500
Alexandria, Virginia 22314
Tel: (703) 836-6400; Fax: (703) 836-2787

**LOCAL COUNSEL**:
SUSAN VAN KEULEN, CA Bar No. 136060, svankeulen@thelen.com
CHRISTOPHER L. OGDEN, CA Bar No. 235517, cogden@thelen.com
**THELEN REID BROWN RAYSMAN & STEINER, LLP**
225 West Santa Clara Street, Suite 1200
San Jose, CA 95113
Tel: (408) 292-5800; Fax (408) 287-8040

Attorneys for Plaintiff/Counterdefendant Seiko Epson Corporation

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San Francisco Division)

| | |
|---|---|
| SEIKO EPSON CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CORETRONIC CORPORATION and OPTOMA TECHNOLOGY, INC.,<br><br>Defendants.<br><hr>CORETRONIC CORPORATION and OPTOMA TECHNOLOGY, INC.,<br><br>Counterplaintiffs,<br><br>v.<br><br>SEIKO EPSON CORPORATION,<br><br>Counterdefendant. | Case No. C06-06946 MJJ<br><br>**REPLY TO CORETRONIC'S OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY CORETRONIC'S FIRST AND SECOND COUNTERCLAIMS**<br><br>Date: May 15, 2007<br>Time: 9:30 a.m.<br>Place: San Francisco<br>Courtroom 11, 19th Floor<br><br>Before: Hon. Martin J. Jenkins |

# I.    **INTRODUCTION**

Coretronic's Opposition to Epson's motion to dismiss Coretronic's second-filed patent infringement claims is based on two main contentions: (1) that Epson's declaratory judgment action in the District of Columbia was "anticipatory" and an attempt "to preempt the plaintiff's choice of forum" and (2) that efficiency and convenience favor this court resolving Coretronic's claims with respect to its patents, in addition to Epson's claims with respect to its patents.[1] Neither contention is correct.

Coretronic relies on a conclusory allegation that the District of Columbia action was "anticipatory," rather than demonstrating that the action was anticipatory under the definition the courts apply.  In fact, the D.C. suit was not anticipatory because Coretronic's March 6 letter did not indicate that a lawsuit was imminent.  Rather, that letter was consistent with an attempt to use irrelevant or invalid patents for their threat value in support of a long-standing set of stall tactics.  Nor can Epson be accused of forum shopping when the forum in which it filed suit is that designated by statute for exactly this circumstance.

Coretronic also relies heavily on an assertion that "SEC has not even tried to serve Coretronic with the Complaint in the D.C. action."  Indeed, Coretronic contends that "SEC's actions are an improper use of the declaratory judgment procedure to try to prevent Coretronic from asserting its projector patents against SEC while pressing forward with asserting its own claims," based on the statement of its own counsel that "I am not aware of any attempt by SEC to serve Coretronic with the District of Columbia action or request that Coretronic to [sic] waive service or accept service on its attorneys."  Coretronic Oppos. at 6; Rader Dec. at ¶ 23. In fact, it is Coretronic who is not eager for the D.C. case to move forward, having refused, on

---

[1] As with the initial motion, the short forms "Epson," "Coretronic," and "Optoma" are used in this paper to refer to the parties.

1    April 30, to accept delivery of the service package forwarded by Federal Express by the D.C.

2    clerk and agreeing, later that day, only to a waiver of service (allowing 60 days for response),

3    rather than an acceptance of service by counsel.  *See* Declaration of Tamir Damari, ¶¶ 7-8.

4    Coretronic, of course, could have mooted any such issue at any time by filing an Answer or

5    other response to the Complaint, a courtesy copy of which was supplied to Coretronic on

6    March 20.  Contrary to Coretronic's allegation, Epson proceeded expeditiously to serve the

7    D.C. Complaint, which service was slowed by delays in the clerk's office of the D.C. court,

8    which, first, delayed from March 19 until April 4 to deliver to Epson's counsel a completed

9    service package and, second, delayed from April 17 to April 25 to forward that package to

10    Coretronic for service pursuant to Fed. R. Civ. P. 4(f)(2)(C)(ii).  *See* Declaration of Tamir

11    Damari, ¶¶ 2-6.

12        To support its claim that the first-to-file rule should be ignored in favor of trying all

13    disputes between the parties in this forum, Coretronic hypothesizes the relevance of Epson

14    Research and Development, Inc. ("ERD"), which it has sought to add as a party by a motion to

15    further amend its counterclaims.  Coretronic's attempt to insert ERD into the case demonstrates

16    the weakness of its position.  There is no evidence that ERD designed any SEC projectors

17    accused of infringement and, even if it had, Coretronic has not articulated a benefit that would

18    accrue from adding ERD as a party.  Instead, the suggestion appears to be a transparent attempt

19    to manufacture a ground for Coretronic's contemplated motion to transfer the D.C. action.  Nor

20    has Coretronic established that judicial economy otherwise so strongly favors combining both

21    suits as to justify disregard of the first-to-file rule.

22

23

24

3

## II.    ARGUMENT

### A.    The D.C. Suit Was Not Anticipatory

Not surprisingly, Coretronic's Opposition ignores the principles enunciated in the cases that Epson cited in its motion, including the holding in *Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993), that the Federal Circuit applies its own law in determining whether "a properly brought declaratory action to determine patent rights should yield to a later-filed suit for patent infringement."  Instead, Coretronic cites cases, such as *Alltrade Inc. v. Uniweld Products, Inc*., 946 F.2d 622 (9th Cir. 1991), following the Ninth Circuit's position that a first-filed declaratory judgment action "meant to deprive the natural plaintiff of the forum of his choice" may be dismissed in favor of a later-filed non-declaratory judgment action.  The Federal Circuit, however, does not follow the "natural plaintiff" theory, but treats declaratory judgment actions as equally valid forms of action.  Thus, in *Genentech*, the Federal Circuit refused to follow Seventh Circuit authority that favored the patentee's choice of forum, instead ruling that the first-filed rule was more compatible with "the purpose of the Declaratory Judgment Act to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist."  998 F.2d at 937; *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995).  The Federal Circuit, whose law controls this patent case, requires that the first-to-file rule be followed unless there is "sound reason that would make it unjust or inefficient" to give precedence to the first-filed action.  *See Electronics for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1347 (Fed. Cir. 2005).

As the cases cited by Epson in its motion indicate, an "anticipatory suit" factor cannot even be considered unless "the plaintiff in the first-filed action filed suit on receipt of **specific**

4

1   **concrete indications** that a suit by the defendant was **imminent**."  Epson Motion to Dismiss

2   (Doc. 32) at 8.  No such showing has been made here.  Coretronic's March 6 letter alleged

3   infringement in furtherance of an invitation to reopen settlement negotiations.  No indication

4   was given when or where Coretronic might later choose (if at all) to file suit.  This is in contrast

5   to the cases on which Coretronic relies, both of which did involve imminent suit situations.  In

6   *Schmitt v. JD Edwards World Solutions Co*., 2001 WL 590039 (N.D. Cal. 2001), the

7   declaratory judgment defendant indicated on March 6 that it would file suit in Colorado the

8   next day and the declaratory judgment action was filed in California on March 7, a few hours in

9   advance of the Colorado action.  In *First Fishery Dev. Serv. Inc. v. Lane Labs USA, Inc*., 1997

10  WL 579165 (S.D. Cal. 1997), the declaratory judgment defendant wrote a letter on June 3

11  enclosing a draft of a complaint it stated it would file on June 6.  The declaratory judgment

12  action was filed on June 4.  These cases are completely different than the present situation.

13  After a patentee's bluff has been called by the filing of a declaratory judgment action, it is very

14  easy for the patentee to turn around and file its own suit and claim that accused infringer knew

15  all along that was what the patentee was planning, but the anticipatory suit cases require

16  concrete indications <u>before</u> the filing of the declaratory judgment action.  Coretronic has not

17  established that Epson's suit in the District of Columbia was anticipatory.

18      Moreover, Epson had little choice but to file its suit in the District of Columbia.  The

19  cause of action was not related to the existing California suit, but was based on Coretronic's

20  threat made in a letter transmitted from Taiwan to Japan, both companies being foreign-based.

21  In contrast to Epson's suit on its own patents, Optoma was not involved in the Coretronic patent

22  cause of action.  It was not clear which district in the United States had proper jurisdiction over

23  that suit, which is exactly the situation that prompted Congress to enact 35 U.S.C. § 293,

24

5

providing the District of Columbia as a forum for such suits. Nor does the forum of patent suits matter as much as it does with other suits, given that all appeals lie to the Federal Circuit. *See Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1040 (Fed. Cir. 1995).

### B. Coretronic Has Not Shown That California Is So Convenient For The Parties As to Overcome The First-To-File Rule

Coretronic asserts that "Both SEC and Coretronic are based in Asia and each has a subsidiary or affiliate, also involved in the projector business, in California's Silicon Valley." Coretronic Opposition at 2. However, this characterization is highly misleading. Epson's supposed affiliate "involved in the projector business," is Epson Research and Development, Inc., which Coretronic has moved to add as a party. In fact, Epson's projectors are designed by its Visual Instruments Division, located in Japan, and Epson will submit evidence in opposition to Coretronic's motion demonstrating its lack of merit.

Coretronic fails to offer any concrete identification of witnesses, even on its own behalf, that are located in California. That is undoubtedly because its important witnesses are located in Taiwan. The inventors of Coretronic's U.S. Patent No. 6,739,831 are Nien-Hui Hsu, Bor-Bin Chou and Shang-Hsuang Wu, all of Hsin-Chu, Taiwan. Inventors Wu and Hsu are also named as the inventors of Coretronic's U.S. Patent No. 6,742,899. Both patents were prosecuted on behalf of Coretronic by North American International Patent Office, which maintains an address in Merrifield, Virginia (a suburb of Washington, D.C.), although the associated telephone numbers and e-mail addresses appear to be in Taiwan.[2]

Despite Coretronic's attempts to characterize the technologies of the Epson and Coretronic patents as similar, adding Coretronic's two patents to the five already-pending

---

[2] Although the proximity of counsel to a forum may not be entitled to the same weight as the direct effect on a party, Washington, D.C. is the location of the largest office of counsel for Coretronic (282 attorneys and advisers) and a few miles from the offices of counsel for Epson.

1    Epson patents would burden the Court, the jury and the parties.  Such additional patents will

2    add substantial numbers of claim term constructions, infringement issues, and prior art and

3    invalidity issues that would not otherwise be in this case.  This will lengthen the trial and the

4    amount of time this Court will have to devote to the case.  Indeed, given the complexity of

5    patent infringement cases, it is likely that the proceedings will be more efficiently handled,

6    rather than less, with two judges available to address the issues that arise.  The parties will not

7    gain any efficiency from having one case pending instead of two; they will have to address the

8    same issues of discovery, claim construction, infringement and validity regardless.  Indeed, to

9    the extent the trials are able to be streamlined, the burdens on the parties may be reduced.

10        To the extent there is overlap of underlying technologies between the patents, that has

11   significant potential to confuse the jury.  Similar claim terms may be used in different senses in

12   different patents,[3] making it difficult for the jury to keep such issues straight.  For example, a

13   significant claim term in Epson's U.S. Patent No. 6,203,158 is "a duct connecting said second

14   cooling air intake port and the air inlet."  Claim 1 of Coretronic's U.S. Patent No. 6,739,831

15   likewise claims "an air duct," but the context of the two patents is different and the terms may

16   not be determined to have the same meaning in both claims.  If all seven patents go forward in

17   a single case, the jury will doubtless find it difficult to keep such distinctions in mind.

---

[3] The meaning of claim terms is heavily influenced by the disclosure of the specification and the history of patent prosecution.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-24 (Fed. Cir. 2005) (*en banc*).

7

1    **III.**    <u>**CONCLUSION**</u>

2          In summary, Coretronic has not demonstrated that this case is one involving "special

3    circumstances" that justify making an exception to the first-to-file rule.  Accordingly, this Court

4    should grant Epson's motion to dismiss or, in the alternative, to stay Coretronic's patent

5    infringement counterclaims.

6    DATED this 1st day of May, 2007.

7
                                         Respectfully submitted,
8
                                         /s/  Christopher L. Ogden
9
                                         _____
                                         James A. Oliff *(Admitted Pro Hac Vice)*
10                                        John W. O'Meara *(Admitted Pro Hac Vice)*
                                         William J. Utermohlen *(Admitted Pro Hac Vice)*
11                                        Tamir D. Damari *(Admitted Pro Hac Vice)*
                                         OLIFF & BERRIDGE, PLC
12                                        277 South Washington Street
                                         Suite 500
13                                        Alexandria, VA  22314
                                         Telephone:  703-836-6400
14                                        Facsimile:  703-836-2787

15                                        Susan van Keulen, CA Bar No. 136060
                                         Christopher L. Ogden, CA Bar No. 235517
16                                        THELEN REID BROWN RAYSMAN & STEINER  LLP
                                         225 West Santa Clara Street
17                                        Suite 1200
                                         San Jose, CA 95113
18

19                                        Attorneys for Plaintiff and Counterdefendant
                                         Seiko Epson Corporation
20

21

22

23

24
                                         8

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Case No. c 06-6946 (MJJ)

SEIKO EPSON CORPORATION,

        Plaintiff (s),

  v.

**CLERK'S NOTICE RESETTING MOTION HEARING**

CORETRONIC CORPORATION, et al.,

        Defendant(s).

_____/

YOU ARE NOTIFIED THAT the hearing regarding plaintiff's Motion to Dismiss/Stay Counterclaims, previously set for Tuesday, May 15, 2007, has been vacated and RESET to be heard **Tuesday, June 5, 2006 at 9:30 a.m,** before the Hon. Martin J. Jenkins, in conjunction with the hearing re: defendant's Motion for Leave to File Second Amended Answer and Counterclaims.

YOU ARE FURTHER NOTIFIED THAT the Case Management Conference previously set for June 5, 2007 at 2:00 p.m. is VACATED, and RESET for **July 10, 2007 at 2:00 p.m.** A Joint Case Management Conference Statement is due 7 days prior to the conference.

Please report to courtroom 11, on the 19th floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102.

Dated: May 11, 2007

FOR THE COURT,

Richard W. Wieking, Clerk

By: _____
        Edward Butler
        Courtroom Deputy

Please refer to Judge Jenkins' Standing Order located at www.cand.uscourts.gov for additional information. Pursuant to the Standing Order, the rescheduling of a hearing date for a motion does not change the date on which an opposition brief or reply brief is due; any opposition brief remains due not less than 21 days prior to the date of the *originally noticed* hearing and any reply brief is due not less than 14 days prior to the *originally noticed* hearing date.

**United States District Court**
For the Northern District of California

# EXHIBIT J

1  YITAI HU (State Bar No. 248085) (yhu@akingump.com)
   ELIZABETH H. RADER (State Bar No. 184963) (erader@akingump.com)
2  AKIN GUMP STRAUSS HAUER & FELD LLP
   Two Palo Alto Square
3  3000 El Camino Real, Suite 400
   Palo Alto, California  94306
4  Telephone:      650-838-2000
   Facsimile:      650-838-2001
5
6  Attorneys for Defendant and Counterclaimant
   CORETRONIC CORPORATION
7
8                  UNITED STATES DISTRICT COURT
9                NORTHERN DISTRICT OF CALIFORNIA
10                   SAN FRANCISCO DIVISION
11  SEIKO EPSON CORPORATION, a          )  Case No. C 06-6946 MJJ
    Japanese corporation,               )
12                                      )
              Plaintiff,                )  DEFENDANT CORETRONIC
13                                      )  CORPORATION'S NOTICE OF MOTION
         v.                             )  AND MOTION FOR LEAVE TO FILE
14                                      )  SECOND AMENDED ANSWER AND
    CORETRONIC CORPORATION, a           )  COUNTERCLAIMS
15  Taiwanese corporation, and OPTOMA   )
    TECHNOLOGY, INC., a California       )
16  corporation,                        )
                                        )  Date:       June 5, 2007
17            Defendants.               )  Time:       9:30 a.m.
                                        )  Courtroom:  11, 19th Floor
18  _____)  Judge:      Martin J. Jenkins
                                        )
19  CORETRONIC CORPORATION, a           )
20  Taiwanese corporation, and OPTOMA   )
    TECHNOLOGY, INC., a California       )
21  corporation,                        )
                                        )
22            Counterclaimants,         )
                                        )
23         v.                           )
                                        )
24  SEIKO EPSON CORPORATION, a          )
    Japanese corporation,               )
25                                      )
              Counterdefendant.         )
26  _____)
27
28

CORETRONIC'S MOTION FOR LEAVE TO FILE                        CASE NO. C-06-6946 MJJ
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 5, 2007, at 9:30 a.m., or as soon thereafter as this matter may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 11 (19th Floor) of the Honorable Martin J. Jenkins, Defendant Coretronic Corporation will and hereby does move the Court pursuant to Fed. R. Civ. P. 13(h) and 15(a), for leave to file a Second Amended Answer and Counterclaims in order to add an additional company affiliated with Plaintiff and Counterdefendant Seiko Epson Corporation ("SEC"). *See* Declaration of Elizabeth H. Rader ("Rader Decl."), Exhibit A (proposed Second Amended Answer and Counterclaims). This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the proposed Second Amended Answer and Counterclaims, the pleadings and papers on file, and such other arguments as may be presented in the Reply and at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Defendant and Counterclaimant Coretronic Corporation ("Coretronic") moves this Court for leave to amend its Answer and Counterclaims previously filed in this action to add Epson Research and Development, Inc. ("ERDI") as an additional counterdefendant. Leave to amend should be granted because, on information and belief, ERDI is an SEC affiliate and/or subsidiary responsible for research and development for the SEC projectors accused of infringing Coretronic's patents. There is no prejudice to SEC or ERDI from the proposed amendment, as the same patents are asserted, the same SEC projector products are accused and the same discovery will be implicated. Accordingly, leave to amend should be granted.

**II.    STATEMENT OF FACTS**

Coretronic is Taiwan's leading provider of innovative projection and display solutions. Optoma is Coretronic's United States subsidiary, headquartered in Milpitas in Silicon Valley, California. SEC filed this patent infringement action against Coretronic and Optoma Technology, Inc. on November 6, 2006. Rader Decl., ¶ 4. Coretronic timely answered on March 5, 2007, denying that its projectors

1  infringe the asserted patents, and counterclaimed for declaratory judgment that the asserted patents are

2  invalid and that two of them are unenforceable for inequitable conduct because SEC was selling a

3  projector, the ELP-3000, four years before it applied for the '158 patent and the '392 patent and failed to

4  disclose this prior art projector to the patent office, although this information would have been material

5  to the examination of its applications. Rader Decl., Ex. B at 4-5, ¶¶ 23-24. Coretronic also seeks a

6  declaratory judgment that its projectors do not infringe any of the asserted patents. *Id.* at 7, ¶ 16.

7          On March 6, 2007, Coretronic provided SEC with written notice that SEC's projectors infringe

8  two of Coretronic's United States patents, Patent Nos. 6,742,899 ("the '899 patent") and 6,739,831 ("the

9  '831 patent"), which also relate to projectors. Rader Decl., ¶ 6. On or about March 20, 2007, Coretronic

10  learned from SEC that on March 19, SEC had sued Coretronic in the U.S. District Court for the District

11  of Columbia, for declaratory judgment that it has not infringed and is not infringing the '899 patent and

12  the '831 patent and that one or more claims of the '899 patent and/or the '831 patent are invalid. *Id.*,

13  ¶ 7. On March 21, 2007, Coretronic amended its Counterclaims in this action pursuant to Rule 15(a) to

14  add counterclaims that SEC has willfully infringed and is infringing Coretronic's '899 and '831 patents.

15  Rader Decl., ¶ 8 and Ex. C. On April 9, 2007, rather than answering Coretronic's Amended

16  Counterclaims, SEC moved to Dismiss or, In the Alternative, to Stay Coretronic's First and Second

17  Counterclaims. Rader Decl., ¶ 9 and Ex. D. On April 11, the Court issued a new scheduling order

18  setting the initial Case Management Conference for June 5, 2007. Rader Decl., ¶ 10 and Ex. E. Thus,

19  discovery had not even commenced and will not commence for approximately one month.

20          According to SEC's website, ERDI includes the Epson Research & Development ASD Group

21  (ASD) which focuses on the development of digital imaging technologies for projectors. Rader Decl.,

22  ¶ 11 and Ex. F. Therefore, on April 18, 2007, Coretronic's counsel wrote to SEC's counsel asking if

23  SEC would agree to the proposed Amendment to add ERDI as a counterdefendant. Rader Decl., ¶ 12.

24  On April 19, Coretronic's counsel provided SEC's counsel with a redlined draft showing the proposed

25  amendment. *Id.*, ¶ 13 and Ex. G. On April 20, however, SEC's counsel refused to consent to

26  Coretronic's proposed amendment. *Id.*, ¶ 14 and Ex. H.

27

28

III.    **LEAVE TO AMEND SHOULD BE GRANTED BECAUSE THE CASE IS AT AN EARLY STAGE AND THE PROPOSED AMENDMENT WILL NOT PREJUDICE THE COUNTERDEFENDANT.**

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleading "shall be freely given when justice so requires." In construing Fed.R.Civ.P. 15(a), the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), held that:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'

371 U.S. at 182. Leave to amend should be granted unless the amendment would prejudice the opposing party, is sought in bad faith, creates undue delay, or is futile. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (reversing a lower court's denial of leave to amend complaint for failure to weigh the four-factored inquiry). Furthermore, the burden of showing why leave should *not* be granted rests with the non-moving party. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).

This action is at the earliest stages of litigation. Nothing has occurred other than the parties filing their respective pleadings and SEC's filing its motion to dismiss or transfer. Rader Decl., ¶ 10. Because SEC has moved to dismiss two of the Counterclaims, it has not yet filed an Answer admitting or denying the allegation in Coretronic's counterclaims. Rader Decl., ¶ 9 and Ex. D. On April 11, the Court issued a new scheduling order setting the initial Case Management Conference for June 5, 2007. *Id.*, ¶ 10 and Ex. E. Thus, discovery has not yet begun, nor will it begin for some time.

Coretronic notified SEC on March 6, 2007 that its projectors infringe Coretronic's '899 and '831 patents. Rader Decl., ¶ 6. Thus, SEC has already known for over one month that Coretronic contends that its projectors infringe the asserted patents. Coretronic now proposes to add, as a counterdefendant, an affiliate and/or subsidiary of SEC that performs development for projectors, rather than some unrelated company. The proposed amendment does not accuse any additional projector products. SEC knows, or should know, what part of its multinational organization is responsible for developing projectors. Thus, there should be no surprise, let alone prejudice, to SEC from the proposed

1  amendment.  It is likely that ERDI and SEC will have similar, if not identical, defenses and their defense

2  to Coretronic's allegation will involve the same witnesses, documents and discovery.  If this motion is

3  granted, ERDI will nevertheless have the full time afforded by the Federal Rules to respond to the

4  Complaint, in addition to the time that this motion is pending.  Accordingly, the Court should grant

5  Coretronic leave to amend its Answer and Counterclaims to add Epson Research and Development as a

6  counterdefendant.

7

8  **IV.    CONCLUSION**

9         For all of the reasons stated above, Coretronic respectfully requests that the Court grant its

10 motion for leave to file its Proposed Second Amended Answer and Counterclaims to add Epson

11 Research and Development as a counterdefendant.

12

13 Dated:  April 23, 2007            AKIN GUMP STRAUSS HAUER & FELD LLP

14

15                                  By:_____/s/_____
                                              Elizabeth H. Rader

16                                  Attorneys for Defendant and Counterclaimant
                                    CORETRONIC CORPORATION
17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SEIKO EPSON CORPORATION,<br><br>    3-5, Owa 3-chome<br>    Suwa-shi<br>    Nagano-ken, 392-8502<br>    Japan,<br><br>        Plaintiff,<br><br>    v.<br><br>CORETRONIC CORPORATION,<br><br>    No. 11, Li-Hsing Road<br>    Science Park<br>    Hsinchu, Taiwan 300<br>    Republic of China,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **Civil Action No. 1:07-CV-00558-RBW** |

## <u>ORDER</u>

Defendant Coretronic Corporation moved to transfer this action to the Northern District of California on the grounds that the action lacks any nexus to this judicial district and should be heard together with a related action between the same parties in the Northern District of California. The Court, having considered the papers filed by the parties and the arguments of counsel, finds that there is good cause that the motion be granted. The Court hereby GRANTS Coretronic's motion and hereby ORDERS that this action be transferred to the Northern District of California.

_____
Date

_____
United States District Judge